(93 Misc. Rep. 251)

## NESBITT v. THOMPSON et al.

(Supreme Court, Trial Term, Franklin County.   January, 1916.)

1. LIFE ESTATES ⬤⟲25—LEASE—NOTICE—TITLE OF LANDLORD.
    A tenant is chargeable with notice of the title of his landlord.
    [Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 47;  Dec. Dig. ⬤⟲25.]

2. LIFE ESTATES ⬤⟲25—LEASE—TERMINATION—DEATH OF LANDLORD.
    The death of the lessor terminates the lease of a life estate.
    [Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 47;  Dec. Dig. ⬤⟲25.]

3. LIFE ESTATES ⬤⟲25—TERMINATION OF LEASE—"EMBLEMENTS."
    A lessee of a life estate, on termination of his farm lease by the death of his lessor became entitled to "emblements";  that is, crops planted by him prior to the death.
    [Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 47;  Dec. Dig. ⬤⟲25.
    For other definitions, see Words and Phrases, First and Second Series, Emblements.]

4. LANDLORD AND TENANT ⬤⟲119—TERMINATION—"TENANT AT SUFFERANCE."
    A tenant under a farm lease of a life estate, who, after its termination by the death of his lessor, continued in the use and occupation of the farm without an agreement, would become a "tenant at sufferance."
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 428–431;  Dec. Dig. ⬤⟲119.
    For other definitions, see Words and Phrases, First and Second Series, Tenant at Sufferance.]

5. PARTITION ⬤⟲63—EVIDENCE—SUFFICIENCY.
    In an action by remaindermen, after the death of the life tenant, to partition the farm in possession of a tenant, wherein the tenant claimed that the term had been adopted by the plaintiff and the other remaindermen, evidence *held* not to show that there had been any adoption of the term, but to show only an adoption for the balance of the farm year.
    [Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 183–185;  Dec. Dig. ⬤⟲63.]

6. FRAUDS, STATUTE OF ⬤⟲58—LEASE.
    In such case, an oral agreement adopting the term would have been insufficient, under the express provision of Real Property Law (Consol. Laws, c. 50) § 242.
    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 90, 91;  Dec. Dig. ⬤⟲58.]

7. REMAINDERS ⬤⟲13—TERMINATION OF FARM LEASE—ADOPTION OF TERM— PAYMENT OF RENT.
    After the termination of a farm lease of a life estate by death of the lessor, the payment and acceptance of rent and the subsequent acts of the tenant in accordance with the lease did not effect an adoption of the term.
    [Ed. Note.—For other cases, see Remainders, Cent. Dig. § 9;  Dec. Dig. ⬤⟲13.]

8. REMAINDERS ⬤⟲13—LEASE—NEW TENANCY—PAYMENT AND ACCEPTANCE OF RENT.
    Where a farm lease was terminated by the death of the lessor, a life tenant, the payment to and acceptance of rent by the remaindermen was evidence of a new tenancy from year to year.
    [Ed. Note.—For other cases, see Remainders, Cent. Dig. § 9;  Dec. Dig. ⬤⟲13.]

Action for partition by Louisa Ross Nesbitt against Sarah J. Thompson and others.   Judgment for plaintiff.

George J. Moore, of Malone, for plaintiff.
Kellas, Genaway & Kellas, of Malone, for defendant La Page.
Charles A. Burke, of Malone, for defendants Thompson and Lunan.

WHITMYER, J.   On November 30, 1912, Sarah Ross, widow of John Ross, late of the county of Franklin, in this state, leased a farm, located in said county, to the defendant La Page, by a lease in writing and under seal, for five years from March 17, 1913, for $200 per year, to be paid from the proceeds of the farm milk, which was to be delivered at a certain creamery, at the rate of $30 per month from the 1st day of May in each year until paid, with a proviso that the rent for each year should be paid on or before the 20th day of December in the year.   The lease required La Page, among other things, to plow as much land each fall as was plowed at the time of taking possession, to pay all highway taxes, to keep buildings and fences in repair, to cut logs, if Mrs. Ross wanted any, and draw same to mill, and lumber from mill to farm for repairs, without expense to Mrs. Ross, to cut six cords of wood for her use each year and draw same out at the beginning of sleighing, and to seed down eight acres of plowed land to meadow each year, except the last.

Mrs. Ross had a life estate in the farm under her husband's will. Plaintiff and defendants Thompson and Lunan are daughters and the remaindermen under their father's will; plaintiff being seised of an undivided one-half, Mrs. Thompson of an undivided one-third, and Mrs. Lunan of an undivided one-sixth.   La Page entered and paid the rent for the first year, and the May and June installments, of $30 each, for the second year, when Mrs. Ross died.   She died on August 27, 1914, leaving a will, in and by which she gave all of her property to Mrs. Lunan and named her as executrix.   The July check for $30 was dated August 25, 1914, was made payable to Mrs. Ross, and was received by Mrs. Lunan after her mother's death.   On the day after the funeral the sisters consulted Mr. Kellas, who is now attorney for La Page, about the rights of the parties.   He read the lease to them, and advised them that La Page had the right to remain for the balance of the year, and that they had the right to receive the rent for that time, and to have the checks for same made payable to the "John Ross Estate."   A few days later, plaintiff and Mrs. Lunan went to the creamery, and plaintiff directed that the checks be made payable to the estate for the remainder of the year.   From the creamery, they went to the farm.   Mrs. Thompson was not with them.   La Page claims that they asked about the payments of rent, that he told them, and that plaintiff said that everything was to go on as before, until his time was up, except that the checks were to run to the estate. He testified, further, that he told them that Mrs. Ross had agreed to shingle the hogpen and shed and one side of the barn, but that plaintiff said that she was short, and that he replied, if she could shingle the hogpen and shed, that he would wait until the next year for the

barn, and that she told him to do so; and he testified, also, that they asked him if he had finished shingling, and that he told them that he wanted to do a little more, but that he did not have the shingles, and that plaintiff directed him to get them from Mrs. Lunan and finish. Mrs. Lunan testified that plaintiff directed him to do as he had been doing, but that no time was mentioned.

Plaintiff testified that she did not talk with him about the farm on that day, but that Mrs. Lunan did, thinking that she could handle him better. And she testified, further, that Mrs. Lunan told him that she wanted to let him know about the change and that they wanted the farm in the spring, so as to settle the estate, and that he said that he had repaired and seeded, and that he showed the seeding, and that she replied, "We will make that right." La Page remained on the farm, and claims that he subsequently obtained three-quarters of a bundle of shingles from Mrs. Lunan and finished the shed, that he repaired the cow stable floor, that he plowed and top-dressed about 20 acres of new seeding, that he cut six cords of wood and drew same to the sugar house, and that he paid a road tax the latter part of March, 1915, for the next year. He said that the wood is at the sugar house now. The tax was paid after the commencement of the action. And plaintiff and Mrs. Lunan testified that, so far as they knew, he simply finished shingling the shed.

Checks were thereafter made out and received as follows: September 25, 1914, $30; October 26, 1914, $30; December 11, 1914, $30; and December 25, 1914, $20. The sisters indorsed them and divided the proceeds according to their rights. On December 11, 1914, they talked about the sale of the farm at Mrs. Lunan's house in Ft. Covington. Plaintiff testified that the price was fixed before that. Mrs. Lunan and Mrs. Thompson testified that they did not want to sell, and that plaintiff did, but that she said that La Page could remain, if they could not sell advantageously. A day or two thereafter plaintiff and Mrs. Thompson wrote to Mrs. Lunan from their homes, just over the line in Canada, not far from Ft. Covington, and asked her to have a notice to quit prepared. She did so, and signed it, and sent it to plaintiff, after which plaintiff and Mrs. Thompson signed it. The notice was dated December 15, 1914, was served by plaintiff, in the presence of Mrs. Thompson, on December 16, 1914, and required La Page to quit on or before March 17, 1915. Plaintiff tried to sell the farm to La Page at different times, but they could not agree upon a price. He admits that she called upon him two or three times for that purpose, but he said that he did not tell her at any time that he wanted to buy, that "he did not tell it that way." He did not vacate, as required, and plaintiff commenced this action in partition on March 17, 1915.

At the close of the evidence plaintiff moved for the direction of a verdict, and defendants for a dismissal of the complaint, on the ground that plaintiff was not in possession of the farm, when the action was commenced. Decision was reserved, and, pending same, the question whether or not the lease was adopted, was submitted to the jury. The answer was in the affirmative, and plaintiff has moved that the find-

ing be set aside, and for judgment, and defendants have moved for a dismissal.

[1-4] La Page is chargeable with notice of the title of Mrs. Ross. 24 Cyc. page 1043, note 14. Her death terminated the lease absolutely. McAdam on Landlord and Tenant (4th Ed.) vol. 1, page 209, section 65; 16 Cyc. page 640; Torrey v. Torrey, 14 N. Y. 430; McIntyre v. Clark, 6 Misc. Rep. 377, 26 N. Y. Supp. 744; Snedecker v. Thompson, 26 Misc. Rep. 160, 56 N. Y. Supp. 775. Thereupon, he became entitled to emblements, namely, to the crops planted by him prior to her death. McAdam, supra, pages 836, 837; Gerard on Titles to Real Estate (5th Ed.) page 214; 16 Cyc. pages 620, 621; 24 Cyc. pages 1070, 1071; Harris v. Frink, 49 N. Y. 24, 10 Am. Rep. 318. He continued in the use and occupation of the farm. Without an agreement, he would have been a tenant at sufferance. 16 Cyc. pages 640, 641, note 61; 24 Cyc. page 1043, note 14.

[5-8] There was no writing, but he claims that the lease was adopted. The sisters were acquainted with its provisions. Plaintiff and Mrs. Lunan were at the farm a day or two after the funeral. Mrs. Thompson was not with them. La Page testified that plaintiff told him about the directions for the change in the checks, and told him to continue until his time was out. Mrs. Lunan agreed with him, except that she said that no time was mentioned. Plaintiff testified that Mrs. Lunan did the talking, and told La Page that they wanted the farm in the spring, so as to settle up the estate, and that La Page thereupon called attention to the repairs, which he had made, and the seeding, which he had done, and that Mrs. Lunan replied, "We will make that right." And Mrs. Thompson, so far as appears, did not talk with him until the time when the notice was served. So that the evidence fails to show an oral agreement. It would have been insufficient, if there had been one. Real Property Law, § 242. And the payment and acceptance of rent, and the subsequent acts of La Page, assuming that he did what he claimed, did not and could not effect an adoption, because the lease was terminated. McAdam, supra, page 209; 24 Cyc. page 912, note 50; Coakley v. Chamberlain, 38 How. Prac. 483. Undoubtedly, the payment and acceptance of rent effected a new tenancy. McAdam, supra, page 209; 16 Cyc. page 640, note 58. McAdam says that acceptance of rent by the remainderman, in a case where the lease is determined by the death of the life tenant, is evidence of a new tenancy from year to year, so as to render a notice to quit necessary.

In this case, however, the facts and circumstances show that the parties agreed to a tenancy only for the balance of the farm year. The lease was a farm lease. The death of Mrs. Ross terminated it on August 27, 1914. The sisters were advised, a few days thereafter, that La Page had the right to remain until the end of the year, and that they had the right to accept the rent for that time, and to have the checks for same made payable to their father's estate. Thereupon plaintiff gave directions accordingly, and she and Mrs. Lunan went to the farm immediately thereafter to tell La Page about the change. The parties do not agree as to what took place there, but the evidence tends to confirm plaintiff's statement. She said that Mrs. Lunan told La

Page about the change, and that they wanted the farm in the spring, and that La Page called attention to the repairs, which he had made, and to the seeding, which he had done, and that Mrs. Lunan replied that they would make that right. The sum of $90 had been paid at that time. La Page remained on the farm and paid the balance for the year, in three payments of $30 each and one payment of $20. December 25, 1914, was the date of the last payment. On December 11, 1914, the sisters conferred about selling the farm. The price was fixed before that. On December 16, 1914, a notice to quit, signed by all of them, was served on La Page. At that time, plaintiff tried to sell the farm to him, but they could not agree on the price. They talked about the matter at different times. He admitted that she called upon him two or three times, but claimed that he did not tell her that he wanted to buy, that "he did not tell it that way."

There was no question for the jury, so that the finding made should be set aside, and plaintiff should have judgment.