J. F. SANDERS, Appellee, v. SUTLIVE BROTHERS & Co., J. H. SUTLIVE, H. L. SUTLIVE and B. F. SUTLIVE, Appellants.

**Life tenants:** LEASES: TERMINATION. Upon the death of a tenant for life all interest of his lessee terminates.

**Same:** TENANCY AT WILL. It will be presumed that the lessee of a life tenant holding over after the death of the life tenant is a tenant at will, in the absence of any showing to the contrary; but this presumption is not conclusive, and may be overcome by proof of facts showing a different tenancy.

**Same:** DEATH OF LIFE TENANT: RIGHTS OF LESSEE. The lessee of a life tenant can acquire no rights under the lease, where the life tenant dies before the commencement of the term, unless the remaindermen acquiesce in or consent thereto.

**Same:** SALE OF REVERSION: ASSUMPTION OF LEASE. The property in suit was in possession of tenants under a lease made with the life tenant, who died prior to the commencement of the renewal term, but the remaindermen acquiesced in the new lease and received rents therefrom. Their grantee, not only bound in law to take notice of the rights of parties in possession, but also having actual knowledge that the parties in possession claimed some right

in the property, accepted a conveyance from the remaindermen expressly providing that he should "assume the lease now on said property." *Held,* that the lease was not terminated by the death of the life tenant, and that the grantee was bound to carry out its obligations.

**Appeal:** AMENDED ABSTRACT: COSTS. Where appellant's amended abstract contained only matters set out in the appellee's additional abstract, the cost of the amendment was taxed to the appellant.

*Appeal from Lee District Court.*—HON. W. S. HAMILTON, Judge.

THURSDAY, OCTOBER 23, 1913.

ACTION to recover possession of real property and for damages. From a judgment in favor of plaintiff, the defendants appeal. *Reversed.*

*Hughes & McCoid,* for appellants.

*W. J. Roberts,* for appellee.

WITHROW, J. I.—One Lorenz Rigler died intestate October 13, 1903, owning in fee the real estate, the right to possession of which is in controversy, situated in the city of Keokuk, together with other real estate. He left surviving him his widow, Margaret Rigler, and two daughters, Neoma Weber and Sarah Speisz. October 28, 1903, the two daughters conveyed by deed to their mother for the term of her natural life all of the real estate which descended from their father, including that which is the basis of this suit; said conveyance providing that the grantee, the mother, should "have and hold said real estate, and receive all income and profits therefrom during the period of the natural life of the said Margaret Rigler, and upon her death the said real estate shall revert to the grantor. It is hereby intended by this instrument to convey to said Margaret Rigler a life estate in all the real estate belonging to the estate of Lawrence Rigler, deceased."

The deed was duly acknowledged and recorded, and thereafter and up to the time of her decease such property was managed and controlled by Margaret Rigler, she receiving the rents and profits therefrom. March 15, 1905, she entered into a contract of lease with the appellants for the period of five years, at a monthly rental of $30. Before the expiration of this lease, on September 18, 1908, another lease at the same rental was entered into between the parties; the term specified therein being from May 15, 1910, the date of the expiration of the first lease, to May 15, 1920.

Margaret Rigler died intestate March 6, 1910, survived by her two daughters. Her death occurred over two months before the expiration of the first lease. An administrator of her estate was appointed, who collected rent from the appellants as it became due up to March 15, 1911. The rents thus received were duly accounted for, and were distributed with the funds of the estate to the daughters of Mrs. Rigler. On the 10th day of April, 1911, the two daughters of Mrs. Rigler, then being the owners of the fee in said property, conveyed the same to J. F. Sanders, appellee, in which conveyance their husbands joined. In the deed is this provision: ''The grantee herein assuming the lease now on said property, and all contracts in reference to said property.'' Thereafter, on June 20, 1911, this action to recover possession of the property was brought by the appellee, alleging unlawful possession on the part of the defendants, these appellants, and claiming damages. By way of defense they pleaded their rights under the lease of September 18, 1908, and averred that such lease was made with the knowledge, approval and direction of the daughters of Mrs. Rigler and their husbands. They aver that the plaintiff, appellee, purchased said real estate April 10, 1911, well knowing that defendants had said lease and were in possession of the premises, and that the lease was valid as between the tenants and the grantors of Sanders. They pleaded that the grantors of appellee participated in the benefits of the lease and collected and received the rents

and profits arising under it, and that they were estopped to deny that appellants had rights thereunder as claimed by them. Appellants also pleaded a ratification and confirmation of the lease by Mrs. Weber and Mrs. Speisz and their husbands, and that the fact of such ratification was known to Sanders, their grantee, prior to his purchase of the property. It was also pleaded that the grantee, Sanders, was in privity with his grantors, and that with such knowledge he assumed the lease in the conveyance to him, and that such assumption was for the benefit of the appellants, and that he is estopped from now taking any position contrary to said ratification. Trial was had in the district court, and judgment was entered finding the plaintiff, J. F. Sanders, entitled to possession of the premises, directing the issuance of a writ of possession, and entering judgment against the appellants for damages.

II. Mrs. Rigler was possessed of a life estate in the property in controversy. It is a general rule that upon the death of a tenant for life all interest of his lessee ceases.

1. LIFE TENANTS : leases : termination.

*Carman v. Mosier*, 105 Iowa 367, and cases therein cited. It is there held that the lessee has no greater rights than his lessor, and the estate held by him is subject to be defeated by the death of a tenant for life. Appellee's claim in this case is bottomed upon that principle. At the time of the death of Mrs. Rigler, the lease held by appellants had not by its terms expired. There was a period of more than two months yet covered by it, subject of course to the application of the rule above stated.

Upon the termination of the lease, whether it be held to have been upon the death of Mrs. Rigler or on May 15, 1910, the date fixed as its expiration, in the absence of facts showing

2. SAME : tenancy at will.

to the contrary, the further occupancy of the lessees with the consent of the owners would be assumed to be as tenants at will. Code, section 2991; *O'Brien v. Troxel*, 76 Iowa 760; *German State Bank v. Herron*, 111 Iowa 25; *Andrews v. Creamery Co.*, 118 Iowa 598,

The presumption thus created is not a conclusive one, but it is subject to be met and overcome by proof that the parties had by their agreement or acts determined upon or recognized a different tenancy. 24 Cyc. 1033.

The lease under which appellants now claim the right of possession by its terms was to commence May 15, 1910. Before the arrival of that time the lessor was dead. Her

3. SAME: death of life tenant: rights of lessee.

estate in the property having been limited to her lifetime, no rights could be claimed by the lessees under such second lease, unless after the death of the lessor it was adopted by her heirs, and unless the continued possession of the property by the lessees after the beginning of its term was recognized and acquiesced in by them and by the tenants as being under the lease and not as tenants at will. To ascertain the rights of the parties, we must therefore turn to the evidence, in its application to the question of adoption or acceptance of the contract of lease, and also as to the knowledge which the grantee in the deed had of the claim of Sutlive Bros.

III. A witness, Rev. Jacob Neusch, testified that he transacted business for Mrs. Rigler during her lifetime, and acted as administrator of her estate; that he was authorized by Mrs.

4. SAME: sale of reversion: assumption of lease.

Rigler to sign the ten-year lease for her, and did sign it on the date it bears, to wit, September 18, 1908. After the death of Mrs. Rigler, and as administrator of her estate, he collected the rent from Sutlive Bros., the lessees, accounted for the same in his reports as administrator, and distributed the estate of which the rents were a part, to the daughters of Mrs. Rigler, grantors of Sanders. He testified that he acted for the heirs of Mrs. Rigler in making the sale to Sanders. He also testifies that he was not present when the deed was written, but that it was drawn according to his instructions, and that he told the attorney who prepared the instrument to insert in it the provision "the grantee herein assumes the lease now on said property," having in mind, as he says, the

Sutlive lease that was on the property. There was no other lease. He also directed the insertion of the words "and all contracts in reference to said property" after the provision assuming the lease. This latter clause was inserted, as he says, to cover an obligation created in a prior lease by Sutlive Bros. from the husband of Mrs. Rigler, who was then the owner of the property, which, we gather from the imperfect record on that subject, permitted the lessees to install a furnace in the leased premises, and obligated the lessor upon the expiration of the term to pay its then value to the lessee. J. F. Sanders, the appellee, testified that at the time of the purchase by him he knew that Sutlive Bros. claimed to have a lease on the building; that he had been in to see them before purchasing, but had not discussed the question of the lease with them. He had the clauses in the deed examined before he paid for the building and knew that they were there. Sarah Speisz, one of the grantors in the conveyance to Sanders, testified as to an alleged conversation with Sanders prior to the sale to him, which she says occurred at her home, in which she claims to have told him there was a lease on the property, and that he said he did not care. This conversation is denied by Sanders, with the further statement that he had never seen Mrs. Speisz before the day of the trial. H. L. Sutlive, one of the appellants, testified that before buying the building Sanders asked him about the ownership of the furnishings and fixtures; that he was told that they belonged to Sutlive Bros., and also that they had a ten-year lease on the building running from May 15, 1910; that after Sanders purchased the property he asked Sutlive if they would not like a new lease at a little more rent, if he would fix up the property; and that he (Sutlive) said they could not afford it at present. In rebuttal Mr. Sanders testified that Sutlive did not say such a paper as the lease was in existence.

IV.  This is the substance of the testimony bearing upon the relations of the parties as to the lease, and also as to the

knowledge of Sanders, before his purchase, of the claims made under it. Sanders, of course, in purchasing the property was bound to take notice of the claims of one in possession. In addition to the obligation which the law thus cast upon him, and the presumption of notice from it, he also had actual notice that the Sutlives made some claim to it, and from all the evidence it is a fair conclusion that he knew they claimed under a lease. In addition to this, the conveyance to him expressly provided that he should "assume the lease now on said property"; and it is undisputed that the only lease to which such could apply was that claimed by the Sutlive Bros. In accepting the deed containing that provision, the appellee became bound for its performance and held to whatever obligation which in that respect could be urged against the grantors at the time of the conveyance. *Sexauer v. Wilson,* 136 Iowa 357, and cases cited therein.

V.    There is then left for determination the question whether, under the facts in the record, there had been such acts by the heirs of Mrs. Rigler, or their agent, which amounted to a recognition of the new lease with Sutlive Bros. Admitting that upon the death of Mrs. Rigler, the life tenant, all rights of her lessee terminated by operation of law, yet it was within the power of her successors, in right of occupancy, the owners of the title, to recognize and confirm the second lease, and make it effective as between themselves and the tenant. *Lowrey v. Reef,* 1 Ind. App. 244 (27 N. E. 626), 24 Cyc. 911. At the time of the execution of the ten-year lease, Mrs. Rigler had the right to so contract, subject only to the limitation which the law placed upon her right of control. The contract was not void for any reason, and not against public policy. It was a valid contract to take effect in the future, subject to be defeated only by her death. Upon the happening of that event the appellants were in possession under their former lease, the terms of which had not expired. Upon its expiration no actual change was made in the relation of the parties, save that which resulted from operation of law.

The appellants continued in possession and paid rent as before for the balance of the term of the old lease and, until sale of the property, made payment as before; and while the larger part of the payments were made to the administrator of the estate of Mrs. Rigler, and accounted for by him in his settlement, he also, as he testifies, acted for Mrs. Rigler in making the new lease, and of course knew of its conditions, and of the claim under which the Sutlives were holding. While proof of an intention on the part of lessee holding over after the termination of his lease that he is occupying the property other than as a tenant at will is not sufficient to establish that fact (24 Cyc. 1033), yet such is proper to be considered in connection with the acts of the owners in determining the true relations existing between the parties.

Rev. Neusch, so far as appears from the record, acted for the mother during her lifetime in all matters relating to the lease, and after her death conducted all the business of the daughters concerning the property, in collecting the rents and in effecting the sale. That he considered the lease to be effective there can be no doubt. Otherwise he would not have placed upon the grantee of the property, under the conditions in the deed, the burden of "the lease now on said property." While as administrator of the estate of Mrs. Rigler he would be without power to bind her daughters in any matter affecting this property, it not being subject to administration, yet in receiving and accounting for the rents as a part of the estate no change was made in the rights of the daughters to the fund, they being the only ones to share in the distribution, and no part of the rent was needed or used to pay the indebtedness of the estate. They permitted the rent to be so handled, and in so caring for it he was their agent. It also appears from his reports that Neusch paid all the taxes accruing against the property. Assuming, in view of the denial of Sanders of any conversation with Mrs. Speisz, that the record is silent as to any act or declaration of the daughters bearing upon the nature of appellants' occupancy, other than in re-

ceiving the rent, their acquiescence in the management of the property by Rev. Neusch and by their declaration in the deed; yet, in the view we take of it, these several circumstances tend most strongly to show that they, as well as the tenants, recognized and adopted the second lease as creating mutual rights and obligations. While the payment and receiving of rent was consistent with the existence of a tenancy at will, the provisions of the conveyance most strongly rebut that view. We must give effect to all of the language of the deed in determining the rights of grantors and grantees under it. We are satisfied that in making the conveyance the grantors intended to give recognition and protection to the rights of the appellants under the second lease, and by its execution and before its delivery they did so; and that in accepting it the grantee knew of such purpose, and took the property subject to that claim and right. Mrs. Weber and Mrs. Speisz, by their agent, had treated the lease as valid, the tenants so acted upon it, and the conveyance placed its burden, if it be such, upon the grantee. He accepted it with both actual and presumed knowledge of the rights of the persons in possession, and is bound to fulfill the obligations which he assumed.

VI. Appellants filed in this court what is designated as additional and amendment to abstract. It contained only the memoranda for judgment filed in the case by the trial court, and this already had been made a part of the record in this court in appellee's additional abstract. It was an unnecessary expense and the cost will be taxed to appellant.

5. APPEAL:
amended ab-
stract: costs.

From the conclusion reached the judgment of the trial court is *Reversed.*

WEAVER, C. J. and DEEMER and GAYNOR, JJ., concur.