J. F. SANDERS, Appellant, v. H. A. SKYLES et al., Appellees.

M. C. SUTLIVE, Appellee, v. O. R. JOHNSON et al., Appellees; J. F. SANDERS, Intervener, Appellant.

**APPEAL AND ERROR:** Supersedeas—Condition of Bond. The deposit of money with the clerk, in connection with a supersedeas bond, in order to obviate appellee's objection to the sufficiency of the bond, may, along with appellant's conduct, very clearly demonstrate that such deposit was *intended to belong to appellee* even though appellant secured a reversal on his appeal.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

JUNE 23, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

ACTION at law, to recover money alleged to have been deposited with the clerk of the district court for the use of the plaintiff, Sanders. Judgment for defendants, and plaintiff appeals.—*Reversed.*

*Hunn & Jones, Frank Oertel,* and *John M. Dawson,* for appellant.

*Hughes & Dolan* and *George L. Norman,* for appellees.

WEAVER, J.—The controversy in this case has in its various phases been eight times heard in the district court, and this is its fourth and, we trust, last appearance in this forum. See 163 Iowa 172, 175 Iowa 582, and 187 Iowa 300.

Stated as briefly as possible, the material facts are: (1)

That on March 15, 1905, one Margaret Rixler, owning a life estate in certain real property in the city of Keokuk, made a lease thereof to Sutlive Brothers & Company, for a term of 5 years, ending May 1, 1910. (2) In September, 1908, the lessor entered into a second contract with Sutlive Brothers & Company, to renew or continue said lease for a term of 10 years, dating from May 15, 1910, at the stated rental of $30 per month. (3) On March 6, 1910, a little more than two months before the new term of lease was to begin, Mrs. Rixler died, and the title to the property passed to her two daughters, in whom the remainder was vested. (4) After the death of the life tenant, Sutlive Brothers & Company continued in possession of the property, and for a time continued to pay the rental of $30 per month. (5) On April 11, 1911, the daughters of Mrs. Rixler, owning, as we have seen, the fee of the property, sold and conveyed it to the present appellant, Sanders, who refused to recognize the lease to Sutlive Brothers & Company, and later brought suit to recover the possession. (6) A judgment was rendered in Sanders' favor, which met with reversal in this court on the theory that his grantors and Sutlive Brothers & Company had recognized and adopted the lease made by Mrs. Rixler, and that Sanders' purchase was made subject thereto; and the cause was remanded for a new trial. See 163 Iowa 172. (7) On the second trial, the court sustained defendant's motion to dismiss the petition, and rendered final judgment against the plaintiff, without hearing evidence. On appeal, the judgment was again reversed, for the error of the court in refusing a trial of the issues joined. 175 Iowa 582. (8) On the third trial, defendants again prevailed, and the judgment was duly affirmed. See 187 Iowa 300.

With this skeleton history of the earlier developments in the case, we shall be able to get our bearings upon the question now presented.

The first appeal, as we have seen, was taken by Sutlive Brothers & Company. To stay the enforcement of the judgment and to remain in possession of the property pending the appeal, they at first filed a supersedeas bond in the usual form in the amount of $1,000; but the sufficiency of such bond was denied, and the movement to require a new bond was avoided by a writ-

ten stipulation by the parties. In that stipulation, after reciting the purpose to appeal, and the objection made to the sufficiency of the bond, it was provided that:

"Whereas, the defendants desire to increase plaintiff's security by making cash deposits with the clerk of the court aforesaid, to wit, $300, the amount of unpaid rent then past due, and a monthly deposit of $30 during the pendency of the appeal to the Supreme Court, as security in addition and supplemental to the security of the bond aforesaid, but without prejudice to their rights as appellants upon said appeal, now, therefore, it is agreed by the parties as follows, to wit: The plaintiff agrees that the defendants, as appellants, desiring to supersede the judgment in this cause, pending their appeal to the Supreme Court, may, at the time of filing the bond aforesaid, deposit with the clerk of this court the sum of $300 in cash, and may deposit with the clerk $30 a month during the pendency of the appeal in the Supreme Court, such sums of money so deposited with the clerk to be held by him as security in addition and supplemental to the bond aforesaid, for the purpose of superseding the judgment entered in the cause pending the appeal, *and until the final determination of the cause*, such deposits, however, to be made without prejudice to appellants' right to prosecute the appeal in the Supreme Court. · It is further agreed that, upon *the final determination of this cause*, that the sums deposited by appellants with the clerk of the court under this stipulation shall first be applied to the satisfaction of the judgment, if any, in favor of the plaintiff, and that the bond aforesaid shall stand as security for any deficit of the amount of the judgment, if any, finally entered in plaintiff's behalf after the application of the cash deposits aforesaid."

In consideration of the performance of this agreement and the making of the deposits provided for, it was agreed that the clerk should approve the bond, and that the judgment should be superseded. The promised deposits were made, from month to month, until they amounted to the sum of $1,050. Defendants have, by dint of persistence in litigation and the ingenuity of counsel, succeeded in maintaining the possession and use of the property for the full period of 10 years, without payment of any rent whatever; and as it is claimed that they are now

insolvent, plaintiff will be left remediless, if it shall be held that the deposits made with the clerk cannot be applied to that purpose. The stipulation mentioned was filed May 11, 1912, and the reversing opinion was rendered in October, 1913. Defendants' monthly deposits were continued until March, 1914, and are still in the possession of the clerk, or of the county treasurer. On January 7, 1918, Sutlive Brothers & Company gave to the clerk a written order to pay said moneys to their mother, M. C. Sutlive, who thereafter brought an action in her own name, asking judgment or order requiring the clerk to deliver the fund to her. Plaintiff intervened in that proceeding, demanding payment of the moneys to him. He also instituted a direct proceeding against the defendants and the clerk, claiming that the deposits were made and held for the rents accumulating under the lease, and that he is entitled to have the deposits so applied as payments *pro tanto* upon the defendants' admitted indebtedness for rents. The two proceedings, which involve the question of the proper ownership of said funds, were consolidated, and the issues tried before James S. Burrows, as referee. After hearing the evidence, the referee found and reported against the claims of the appellant, and awarded judgment for the amount of said deposits in favor of M. C. Sutlive. The court approved and confirmed the report of the referee, and entered judgment accordingly.

While the case as presented is not free from difficulties, its essential merits are hardly open to dispute. For 10 years or more, Sutlive Brothers & Company continued, with unflagging determination, to assert their right to the possession and use of the leased property, and at each step and turn necessarily conceded their obligation to pay therefor at the rate of $30 per month. Their contention as to the nature of their right in the premises has been won. They have been awarded every right they claimed, and now ask the aid of the court in evading the performance of their own admitted obligation. If the law and the established facts entitle them to such relief, it is the duty of the court to grant it; but the showing which will justify a judgment which is unconscionable should not be clouded by any element of doubt. If, in this case, the question were such only as naturally arises upon the office or effect of an ordinary ap-

peal bond after a decision in favor of the appellant, there would be little or no doubt that the surety is exonerated, or at least entitled to exoneration, from all liability. The bond in such case is *functus officio:* its office has been performed. We are of the opinion, however, that the deposit in this case is not to be so classed, and that the referee and the trial court erred in giving it that effect. In other words, the finding of the referee upon the conceded facts that the deposit of money was "made as an appeal bond" is not sustained by the record. An appeal bond was, in fact, provided, but the penalty of $1,000 was objected to as insufficient; and in view of the fact that the litigation was liable to be prolonged, and that the rent would be continually becoming more and more in arrears, it is apparent that the objection was well taken. It is also clear that the defendants and their counsel then recognized the justice of the demand; and as they were insisting upon and fighting for the privilege of paying the rent, each payment of the monthly installment or its equivalent into court would work them no prejudice, but would so reduce the liability on the bond that it could be safely approved. The deposit was, therefore, made, not as a new or additional appeal bond, but as a consideration for the plaintiff's consent to the approval of the bond already prepared. That such deposits were regarded and treated as rent payments is very clearly shown by the conduct of the parties,—the practical construction which they themselves placed upon the agreement. For example, in November, 1913, after the reversal ordered by this court upon the first appeal, Sanders served Sutlive Brothers & Company with notice to quit, and a threat of ouster proceedings, and the latter sued out an injunction to prevent such action. In their petition for an injunction, filed after said reversal, and while they were still making the monthly deposit, they pleaded the stipulation for said deposits. Describing said stipulation and the agreements therein contained, the petition, referring to the action in which such stipulation was filed, stated as follows:

"Eighth. The said cause of action was tried in the district court of Keokuk, and the said court entered an order ousting these plaintiffs, and held the said lease void.

"Ninth. That, upon the said decision of the district court,

these plaintiffs appealed said cause to the Supreme Court of the state of Iowa, and filed a supersedeas bond, in which they are bound to pay all rents and profits and damages, as shown by said bond on file with the clerk of the district court.

"Tenth. That, after filing of the said bond, the defendant herein contended that the said bond was insufficient in amount, and the said plaintiffs and defendant entered into a stipulation whereby the defendants in said cause were to pay to the clerk of the district court *the sum of $300, to apply ultimately on the rent,* as provided for in said lease, and *each and every month thereafter to pay $30 a month to said clerk,* a copy of which stipulation is hereto attached, and marked Exhibit A, and by this reference made a part hereof. And that plaintiffs herein have fully complied with said stipulation, and *paid the said $300 and all the subsequent payments of $30 per month to the said clerk, and has at all times been ready and willing to pay the rent, as provided for in said lease.*"

Thus we find the defendants explicitly and unreservedly declaring that the payments of the deposits were intended to "apply on the rent as provided for in said lease;" and it was not until the money had rested with the depositary for that purpose for nearly four years that they awoke to the possibility of depriving the plaintiff of even this partial compensation. It should be stated, by way of explanation, that the deposit of $300 was the equivalent of the amount of unpaid rent then past due.

The payment of the agreed deposits was in satisfaction, *pro tanto* at least, of a debt which defendants admitted they justly owed; and the money once delivered to the clerk pursuant to such agreement ceased to be their money. They had no right thereafter to withdraw it or to control its disposition, except the right to insist upon credit therefor in the final adjudication. The fact, if it be a fact, as suggested by counsel, that a judgment has been rendered against defendants for the unpaid rent in another proceeding, and execution on such judgment returned unsatisfied, is immaterial. The plaintiff can have but one satisfaction for his demand, and if he obtains it from one source, it will work a release or satisfaction to the same extent of the other.

The defendants having no title to the deposit money, they

could confer none by their order or assignment to their mother. It follows that the judgment of the district court must be reversed, and the cause will be remanded for the entry of judgment in harmony with this opinion. Appellees' motion for affirmance of the judgment below is denied.—*Reversed.*

Stevens, C. J., Preston and De Graff, JJ., concur.