In the Matter of the Petition of JOHN J. O'DONNELL, to Render and Settle His Account as Executor, etc., of MICHAEL E. O'DONNELL, Deceased.

JOHN J. O'DONNELL, as Executor, etc., and Others, Appellants; WILLIAM K. VOORHEES GRAIN COMPANY, Respondent.

Second Department, March 7, 1924.

Executors and administrators — claim against estate — testator holding life estate in real property under wife's will renewed for seven years lease given by wife — testator died prior to expiration of term — lease contained covenant of quiet enjoyment — remainderman requested that rent be paid to her which was done — subsequently remainderman informed lessee that lease terminated on death of life tenant and demanded increase in rent but did not demand possession — later lessee moved out and surrendered possession which was accepted — claim against estate based on ground of constructive eviction by remainderman — lessee was put on inquiry when life tenant renewed lease in his own name though his wife's will was not then probated — lessee was not evicted and has no just claim against estate — lessee's claim if valid was not barred by Surrogate's Court Act, § 233 — subsequent purchasers and mortgagees took subject to lessee's claim — creditor must assert demand for sale of real estate in accounting proceeding.

The lessee of real property is not constructively evicted from the premises and has no just claim against the estate of the lessor upon the ground that there was a violation of the covenant of quiet enjoyment, where it appears that the lessee leased the premises originally from the testator's wife; that the wife devised the property to the testator for life, with remainder over to her daughter; that after the death of the original lessor the testator renewed the lease in his own name for a term of seven years by a written lease containing a covenant of quiet enjoyment; that the lessee at the time of the renewal had no actual knowledge that the interest of the testator was only a life interest; that before the expiration of the term the testator died; that the remainderman notified the lessee shortly after the death of the testator that she was the owner of the premises and requested the lessee to pay the rent to her, which was done for several months when she then notified the lessee that the lease executed by the testator terminated on his death and demanded an increase in the rental, but did not demand possession of the premises; and at no time was possession demanded by the remainderman; that thereafter the remainderman refused to accept the old rental and at the end of three months the lessee removed its goods from the premises and surrendered possession to the agent of the remainderman who accepted the surrender.

The lessee was put upon inquiry as to the title of the premises at the time when the testator renewed in his own name the lease which had been executed by his wife.

Moreover, if the claim of the lessee as a creditor of the estate was valid, it was not barred by section 233 of the Surrogate's Court Act on the ground that no proceeding for the sale of the real property of the decedent for the payment of his debts was instituted within eighteen months after the issuance of letters testamentary, or by the *bona fides* of the subsequent purchasers and mortgagees of the property, for they took subject to the creditor's claim.

A creditor must now assert his demand for sale of real estate to satisfy debts in the accounting proceeding, and not, as formerly, by a separate proceeding.

KELBY, J., dissents, with opinion.

APPEALS by John J. O'Donnell, as executor, etc., and others, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 20th day of September, 1923, directing the sale of real property of the testator to satisfy a claim of a creditor, and also from an order entered in said clerk's office on the 17th day of August, 1922, directing the said executor to file his account.

In October, 1910, one Ann O'Donnell, the owner of certain premises on Dean street, Brooklyn, leased the same to Peterson and Voorhees for a term of seven years from November 1, 1910, and the William K. Voorhees Grain Company entered into possession of the demised premises under the lease and rema'ned in possession during the full term. On September 11, 1913, Ann O'Donnell died, leaving a will dated November 16, 1898, in which she devised all her estate, real and personal, to her husband Michael for his life, with remainder to his daughter Anna S. M. Martin. This will was not admitted to probate until January 29, 1921. After the death of Mrs. O'Donnell the life tenant collected the rent of the premises under the lease made by his deceased wife. The term mentioned in the lease was to expire November 1, 1917, and on April 2, 1917, while the lease was still in force, the life tenant made a written lease of the premises to the grain company for the term of seven years from November 1, 1917, at the yearly rent of $600, payable in equal monthly payments on the first day of each month.

It is stipulated: " That at and prior to the date of the execution of the lease between the said Michael E. O'Donnell and the said Grain Company last referred to, the said Grain Company did not have any actual knowledge that the interest of the said Michael E. O'Donnell in said premises was only a life interest, but at and prior to the date of the execution of said lease, the said Grain Company did not make any inquiry as to the interest of the said Michael E. O'Donnell in the said premises."

The term mentioned in the original lease made by Ann O'Donnell expiring November 1, 1917, the grain company continued in possession under the new lease made by Mr. O'Donnell, paying

Second Department, March, 1924.          [Vol. 208

the rent as it fell due on the first day of each month. This went on for three years of the new seven-year term. On November 17, 1920, Michael E. O'Donnell died, his life estate in the devised premises terminated, and the remainder vested in his daughter Anna Martin in fee pursuant to the terms of her stepmother's will.

On November 30, 1920, the attorney for Mrs. Martin sent a letter to the grain company, the tenant in possession, notifying it that on the death of Mr. O'Donnell, his daughter, Mrs. Martin, became the owner of the premises and requesting that all rents be paid to her.

It is stipulated between the parties:

" 15. That after the receipt of the said letter of November 30, 1920, from Anna S. Martin, by her attorney, to the said Grain Company, the said Grain Company paid, directly to the said Anna S. M. Martin, the sum of fifty dollars per month as the rent for the use of the said premises occupied by it for the months of December, 1920, January, February, March, April and May, 1921, by its corporation bank checks or drafts drawn each month to the order of the said Anna S. M. Martin, and the said Grain Company remained in possession of said premises during said periods of time. For the first of said payments said Anna S. M. Martin delivered to the said Grain Company her receipt, as follows:

" ' BROOKLYN, N. Y., <i>Dec.</i> 2, 1920.

" ' Received from Wm. K. Voorhees Gr. Co. Fifty and no /100 Dollars Rent premises 665 Dean St.

To Jan. 1st, 1921.

$50 00 /100          " ' ANNA S. M. MARTIN.'

" 16. Thereupon correspondence ensued, copies of which are as follows:

" ' 560 Carlton Ave.,<br>" ' BROOKLYN, N. Y.

" ' Messrs. WM. K. VOORHEES GRAIN CO.

" ' DEAR SIRS.— On account of my father having only a life interest in the property on Dean St. the lease which he gave you expired at his death.

" ' You know how taxes have increased the past five years and this year a still greater increase.

" ' In order to hold the property I am compelled to have at least One Hundred Dollars a month rental commencing June 1st.

" ' I know you will realize under present conditions this increase is only just.          Respectfully yours,

" ' ANNA S. MARTIN.

" ' May sixth, nineteen twenty-one.'

" ' *May* 20, 1921.

" ' Mrs. ANNA S. M. MARTIN,
      " ' 560 Carlton Avenue,
            " ' Brooklyn, N. Y.:

" ' DEAR MADAM.— Wm. K. Voorhees Grain Company has consulted me in reference to your letter of May 6, 1921, in which you stated that the rent of 665 Dean Street would be advanced on June 1. As you know, the Company holds a lease from Michael O'Donnell having several years to run, which you say is terminated by his death. Will you kindly tell me what rights Mr. O'Donnell had in the property and how they arose, in order that I may properly advise my client of his obligations.

" ' Yours truly,
" ' CHAS. COLEMAN MILLER.'

" ' 560 Carlton Ave.
" ' BROOKLYN, N. Y.

" ' Mr. CHARLES COLEMAN MILLER,

" ' DEAR SIR.— In reply to your letter of May 20th, regarding the increase in rent for Wm. K. Voorhees Co.

" ' The property in question was in my mother's name or rather my step-mother. She left a will leaving same to my father for his lifetime and at his death to revert to me or to my children.

" ' My father had only a life interest in the property so that he had not the power to lease it after his death.

" ' The taxes on those two lots will run close to Three Hundred Dollars this year so at Fifty Dollars per month it would not pay me to hold them.

" ' The place is decidedly cheap at One Hundred Dollars a month. I am paying almost that for a seventeen-foot store on Washington Ave.

" ' If there is any further explanation you require kindly advise me.

" ' Respectfully yours,
" ' ANNA S. MARTIN.

" ' May twenty-three, nineteen twenty-one.'

" ' *May* 27, 1921.

" ' Mrs. ANNA S. MARTIN,
      " ' 560 Carlton Avenue,
            " ' Brooklyn, N. Y.:

" ' DEAR MADAM.— I received your letter of May 23 with information regarding premises 663 Dean Street, and thank you for same. Of course I am endeavoring to advise my client in the light of all the facts and would like to call your attention to one or two matters which seem to me to have an important bearing on the situation.

" ' You seem to have recognized the existing lease by asking for payment of the rent to you and accepting same for the past six months. Such a recognition, it seems to me, would continue my client's rights under the lease until its termination.

" ' There is a further consideration, namely, that the lease made by your father contains a covenant of quiet enjoyment under it in favor of the lessee. Any disturbance of the lease would be a violation of this covenant. In that event, my client would have a claim against your father's estate for any damages he might suffer in the way of an increased rental, or otherwise. As I understand that your father's estate is solvent, a claim would have to be made against it in the event that you successfully established your right to a revocation of the lease. I understand that your brother is the sole devisee of property left by your father. Consequently, he is an interested party and, perhaps, you will think it desirable to confer with him in the matter.

" ' Yours truly,

" ' CHAS. COLEMAN MILLER.'

" Thereupon further correspondence ensued between the attorneys for the parties, by which Mrs. Martin repudiated the suggestion that she had recognized and ratified the aforesaid lease given by Michael E. O'Donnell to the William K. Voorhees Grain Company.

" 17. That on or about the 7th day of June, 1921, the said Grain Company forwarded by mail, to the said Anna S. M. Martin, its check to her order for the sum of $50, accompanied by a letter written on the letterhead of the said Grain Company, a copy of which is as follows:

" ' BROOKLYN, N. Y., *June* 7, 1921.

" ' Mrs. ANNA S. M. MARTIN,

" ' 560 Carlton Avenue,

" ' Bklyn., N. Y.:

" ' DEAR MADAM.— Enclosed please find our check for $50.00 in payment of June rent for 657/665 Dean Street.

" ' Yours truly,

" ' WM. K. VOORHEES GRAIN CO.,

" ' ALFRED M. VOORHEES,

" ' *Sec. & Treas.*'

" 18. That on the 8th day of June, 1921, the said Anna S. M. Martin wrote a letter to the said Grain Company addressed to its main office 23 Flatbush Avenue, Brooklyn, returning the said Grain Company's check of $50, of which the following is a copy:

" ' BROOKLYN, N. Y., *June* 8, 1921.

" ' WM. K. VOORHEES GRAIN CO.,

" ' 23 Flatbush Avenue,

" ' Brooklyn, N. Y.:

" ' GENTLEMEN.— I am in receipt of check this morning from you for Fifty ($50) Dollars, stated to be in payment of rent for the month of June for premises 657 /665 Dean Street; I return the check to you.

" ' The rent for said premises for the month of June, 1921, and thereafter, until further notice, as I have previously. notified you, is One Hundred ($100) Dollars per month.

" ' Very truly yours,

" ' ANNA S. M. MARTIN,

" ' 560 Carlton Ave.'

" 19. That on July 26, 1921, Michael J. Joyce, Esq., attorney for said Anna S. M. Martin, stated over the telephone to Charles Coleman Miller, attorney for said William K. Voorhees Grain Company, that said Anna S. M. Martin had made a contract to sell the premises in question.

" 20. That the said Grain Company did not pay the increased rent demanded by the said Anna S. M. Martin beginning with the month of June, 1921, or any part thereof.

" 21. That on or about the 29th day of August, 1921, the said Anna S. M. Martin commenced an action against the said Grain Company in the Municipal Court of the City of New York, Borough of Brooklyn, Sixth District, Clerk's File No. 6132–1921, to recover the sum of $150 as and for the rent of said premises occupied by the said Grain Company for the months of June, July and August, 1921, at the rate of $50 per month; that no rent had been paid for said months."

In the Municipal Court action instituted by Anna Martin the grain company appeared and answered. The defendant, tenant, in its answer demanded particulars of plaintiff's claim " setting forth in detail the terms of a lease, if plaintiff claims under a lease, and, if plaintiff claims only for use and occupation, then to so state." Mrs. Martin (plaintiff, landlord, in the Municipal Court action and owner of the fee) stated in her original bill of particulars that her claim for $150 was for rent for the months of June, July and August, 1921, " at the agreed rate between plaintiff and defendant of $50 per month."

The defendant, tenant, asked a further bill of particulars, namely, " the terms of the lease, if any, under which plaintiff claims, and, if the claim is not upon a lease, then a statement as to the nature

of the agreement whether oral or in writing, and the period covered by said agreement, stating the date of its commencement and the date of its expiration." The attorney for Mrs. Martin filed an affidavit in which he said concerning the terms of the lease: " The question as to the term of the agreement between the parties, no specified time being given, would, as I understand, by operation of law,* expire on the first day of October, 1921."

It is further stipulated:

" 23. That on or about the 22nd day of August, 1921, the said Grain Company moved its goods and chattels from said premises to No. 36 Snediker Avenue, in the Borough of Brooklyn, and placed a sign over the said Dean Street premises which advised the public that the said Grain Company had moved its said place of business therefrom to said 36 Snediker Avenue.

" 24. That on the afternoon of the 1st day of September, 1921, Nicholas R. Mersereau, the duly qualified agent of the said Grain Company, authorized in that behalf, called at the office of Michael J. Joyce, Esq., the attorney for the said Anna S. M. Martin, and surrendered the said premises in behalf of the said Grain Company to the said Anna S. M. Martin, through her said attorney and tendered the key of said premises to Mr. Joyce as attorney for Mrs. Martin and stated to Mr. Joyce that the said Grain Company had moved to another location and desired to be relieved of any further liability for rent; that Mr. Joyce accepted said key and told Mr. Mersereau, on behalf of Mrs. Martin, he accepted the surrender of the possession of said premises and that the said Grain Company would not be held liable for any future rent."

The appellants insist that this constituted a voluntary surrender of the demised premises by the tenant, and that the tenant saved the fifty dollars rent for the month of September.

The difference between the rental in the lease of 1917 by the life tenant, $50 per month, and the market rental value of the property, is agreed to be $1,900. The surrogate decreed that the grain company had a valid claim against the estate of Michael O'Donnell for $1,900 damages for constructive eviction, with interest from September 1, 1921.

*Lynn C. Norris* [*James W. Redmond, Edward M. Perry* and *Michael J. Joyce* with him on the brief], for the appellants.

*Charles Coleman Miller,* for the respondent.

KELLY, P. J.:

The appellants, citing *Mason* v. *Lenderoth* in this department (88 App. Div. 38, 40), argue that the grain company was bound to

---

* See Real Prop. Law, § 232, as amd. by Laws of 1920, chap. 130.— [REP.

show an eviction or an actual ouster by a paramount lawful title (*Parkinson* v. *Sherman*, 74 N. Y. 88, 93), and that while eviction may be worked without resort to physical force or legal process (*Home Life Ins. Co.* v. *Sherman*, 46 id. 370), they contend that the record fails to show that the tenant in the case at bar yielded possession of the premises under any of the circumstances which the courts have held sufficient disturbance of quiet enjoyment to constitute eviction. They cite Mr. Justice WOODWARD's opinion in the *Mason Case* (*supra*): "The covenant for quiet enjoyment goes only to the possession — not to the title. (*St. John* v. *Palmer*, 5 Hill, 599; *Fowler* v. *Poling*, 6 Barb. 165.) Mere apprehension of eviction created in a tenant's mind by a judgment of foreclosure under a mortgage prior to his lease, is not legally sufficient to warrant him in fleeing from the demised premises, and in claiming damages as in case of actual ouster. Change of title to the leased premises is not of itself necessarily inconsistent with a tenant's peaceable possession."

The appellants cite a number of cases in support of their argument that on the facts here, there was no eviction, actual or constructive. They argue that there was nothing illegal or fraudulent *per se* in the life tenant making a lease for seven years. Possibly he had the weakness common to humanity, of putting off thoughts of his last end. He may have honestly supposed that he was good for seven years, whereas he lived but three. There is the rather unusual delay in filing his wife's will for probate which gave him but a life estate in the property, but upon the facts here I doubt whether such delay warrants any inference of improper motives.

The appellants also argue that on his death, his daughter, the remainderman, had her choice to treat the tenant as a trespasser or as a tenant for another year upon the terms of the prior lease, so far as applicable. (*Schuyler* v. *Smith*, 51 N. Y. 309; *Hinton* v. *Bogart*, 166 App. Div. 155, 159.)

The appellants suggest that Mrs. Martin by receiving for six months the rent specified in the seven years' lease made by her father recognized and ratified that lease (citing *Sanders* v. *Sutlive Bros. & Co.*, 163 Iowa, 172; 187 id. 300). Apparently they do not stress this point, but they argue that when the grain company moved out of the premises on August 22, 1921, and when they formally surrendered possession of the premises on September 1, 1921, they acted voluntarily and obtained from Mrs. Martin an agreement that they "would not be held liable for any future rent." They were liable for rent for the month of September, 1921, in any event, and appellants argue that there was no eviction, actual or constructive.

On the other hand, counsel for the grain company, creditor, respondent, argues that the grain company was constructively evicted and yielded possession to the superior title of Mrs. Martin, the remainderman. He says: " A disturbance of the lessee's enjoyment by legal process is not necessary to constitute an eviction. Possession, without a struggle to maintain it, may be surrendered to one having a paramount title, with the same right to resort to the grantor's covenants of warranty that would have been brought about by an eviction under process of law." He cites *Cowdrey* v. *Coit* (44 N. Y. 382, 392); *Shattuck* v. *Lamb* (65 id. 499, 503); *Scriver* v. *Smith* (100 id. 471, 477); and a number of other cases in support of his contention. He argues that the grain company did not vacate the premises under a settlement of a controversy with Mrs. Martin, but because of her paramount title. He says: " The surrender of the premises on September 1, 1921, was a settlement, not of any controversy between the Grain Company and the estate of Michael E. O'Donnell, but of the term which resulted by the acts and attitude of Mrs. Martin after she became possessed of the property."

This is the crux of the creditor's case. The surrogate (121 Misc. Rep. 496) has sustained the creditor's contention, citing an opinion by Surrogate SLATER in *Matter of Hunt* (120 Misc. Rep. 174).

In the case cited the learned surrogate collated the authorities on the subject of the liability for breach of the covenant for quiet enjoyment in a lease. He referred to *Thorley* v. *Pabst Brewing Co.* (179 Fed. Rep. 338, U. S. Cir. Ct. Appeals), where NOYES, Circuit Judge, said: " A tenant who has not paid in advance can, upon eviction by superior title, recover only nominal damages and can recover nothing for the value of his lease or for improvements * * *. That exceptions to this general rule which call for compensatory damages arise: (a) In case of fraud, or that which approximates fraud, on the part of the lessor; (b) in case of fault or that which amounts to fault upon the part of the lessor; but the execution of a lease by the lessor with knowledge that he is without full authority to do so, does not amount to a fault unless the lessee is thereby misled."

In the case before Surrogate SLATER the life tenant made a lease for a term commencing February 1, 1919, and ending February 1, 1925. He died April 24, 1920, and his death terminated the lease. (*Nesbitt* v. *Thompson*, 93 Misc. Rep. 251, 256; *Williams* v. *Alt*, 226 N. Y. 283, 288; Real Prop. Law, § 530, as added by Laws of 1920, chap. 930; formerly Code Civ. Proc. § 1664.) The remaindermen evicted the tenant on December 17, 1921, by proceedings in the County Court. The surrogate held that the estate of the life

tenant was not liable because the evicted tenant had knowledge of the fact that the lessor had but a life estate. Surrogate SLATER says (p. 177): " If Hunt [the life tenant], or his attorney, had said nothing to the lessee regarding the character of his ownership, and the eviction had taken place upon his death prior to the termination of the term of the lease, compensatory damages would arise, because the withholding of the knowledge of the life tenancy of the lessor was such lack of good faith in law as to approximate fraud on the part of the lessor, and the execution of the lease by the lessor without disclosing the quality of his estate would be held to have misled the lessee." While, strictly speaking, this is *obiter*, because Surrogate SLATER decided that the tenant in the case before him had actual notice of the limitation upon the lessor's estate, it may be that on the facts in that case there was evidence justifying his conclusions as to lack of good faith. I think this is a question of fact depending on the evidence in the case.

In the case at bar the stipulated facts are: " 9. That at and prior to the date of the execution of the lease between the said Michael E. O'Donnell and the said Grain Company last referred to, the said Grain Company did not have any actual knowledge that the interest of the said Michael E. O'Donnell in said premises was only a life interest, but at and prior to the date of the execution of said lease, the said Grain Company did not make any inquiry as to the interest of the said Michael E. O'Donnell in the said premises." I dislike to impute improper motives to the deceased life tenant. I have already referred to the fact that he may have acted honestly without reflecting on his possible death before the expiration of the seven-year term. It is true we have the fact that at the time the lease was executed, O'Donnell's wife was dead, and had left a will limiting his interest to a life estate, which will was not offered for probate until after the death of the life tenant, but the failure to offer the will for probate may have been due to the fact that the only persons interested in the estate of his deceased wife were himself and his daughter. The lease appears to have been witnessed by and acknowledged before a real estate broker. No lawyer's name appears on the instrument. On the other hand, the original lease of the property in 1910 was made by *Ann O'Donnell* and the tenants knew that Michael, the husband, was not the owner at that time. It has been held that the burden of proof is upon the lessee " to prove the facts which would take this case out of the general rule of damages, and bring it within the exceptions." (*Matter of Strasburger*, 132 N. Y. 132.) The Circuit Court said in the *Thorley Case* (*supra*) that mere knowledge on the part of the lessor of his want of full authority to let, did

not make out an exception to the rule that only nominal damages could be awarded unless the lessee is misled. This court reiterated the rule in *Orecchinto* v. *Chittenden* (177 App. Div. 88). In April, 1917, when O'Donnell made the new lease for seven years, the grain company was in possession under the prior lease of 1910 made by Ann O'Donnell. It would seem that there was a duty on the grain company holding under Ann O'Donnell not to do anything in connection with the real estate inconsistent with or which could injure the rights either of Ann O'Donnell, its lessor or of persons deriving title under Mrs. O'Donnell. In other words, that the grain company was put on inquiry as to the right of Michael E. O'Donnell to make the lease.

Taking the entire evidence, I have grave doubt whether the learned surrogate was right in holding that a case for compensatory damages was made out against the husband's estate because of constructive eviction by paramount title.

But was there an eviction, actual or constructive? The respondent grain company does not claim that there was any *actual* eviction. They assert *constructive* eviction.

In *Hyman* v. *Boston Chair Mfg. Co.* (26 J. & S. 282) the court said: "It is enough if the tenant yield the possession of the premises to the person having the legal title," but the opinion in that case (*supra;* see, also, 11 N. Y. Supp. 52) discloses the fact that in that case the superior title had been decreed in a summary proceeding.

In the case at bar there is no evidence that Mrs. Martin, the remainderman, ever demanded possession. She sought to obtain an agreement for higher rent, owing to the well-known conditions prevailing, but when the grain company refused to pay higher rent she made no demand for possession. The grain company remained in possession and paid her the monthly rent of fifty dollars down to June, 1921. When they failed to pay the rent for June, July and August, 1921, she did not dispossess them. After the tenant vacated the premises on August 22, 1921, and put up a sign that they had moved, the remainderman on August 29, 1921, brought suit in the Municipal Court to recover the three months' rent, June, July and August. If the grain company remained in possession after Michael O'Donnell's death with consent of the remainderman and without regard to the lease of 1917, the law inferred a lease between the remainderman and the grain company at fifty dollars per month which would not expire until September thirtieth. But it is agreed that on September first the " duly qualified agent of the said Grain Company, authorized in that behalf," called at the office of the attorney for Mrs. Martin

and " surrendered the said premises in behalf of the said Grain Company to the said Anna S. M. Martin, through her said attorney and tendered the key of said premises to Mr. Joyce as attorney for Mrs. Martin and stated to Mr. Joyce that the said Grain Company had moved to another location and desired to be relieved of any further liability for rent; that Mr. Joyce accepted said key and told Mr. Mersereau, on behalf of Mrs. Martin, he accepted the surrender of the possession of said premises and that the said Grain Company would not be held liable for any future rent."

No one asked the grain company to move out. No one asked the grain company to surrender the premises or to give up the key. Surely the action in the Municipal Court for the three months' rent in arrears was not an eviction. Nor was the statement made by Attorney Joyce to Attorney Miller over the telephone on July twenty-sixth that Mrs. Martin had made a contract to sell the premises an eviction.

The grain company's claim for damages is based upon interference with their quiet possession under the lease made by the life tenant in 1917. When, after his death pursuant to the notice of November 30, 1920, they attorned to and recognized the remainderman as their landlord and paid her the rent for December, 1920, and January to May, inclusive, by checks to her order, accepting receipts signed by her as owner, when they voluntarily left the premises and surrendered the key, and when they subsequently, in November, 1921, settled the Municipal Court action brought by her and avoided payment of the rent for September for which they would be liable in any case, I am inclined to think their surrender of the premises was not because of any paramount title in Mrs. Martin.

The covenant in the lease was for their quiet possession of the premises. They were in quiet possession until they moved out voluntarily in August. I repeat Mr. Justice WOODWARD's language in *Mason* v. *Lenderoth* (*supra*): " Mere apprehension of eviction created in a tenant's mind by a judgment of foreclosure under a mortgage prior to his lease, is not legally sufficient to warrant him in fleeing from the demised premises, and in claiming damages as in case of actual ouster." See, also, Judge ANDREWS' opinion in *Metropolitan Life Ins. Co.* v. *Childs Co.* (230 N. Y. 285, 289): " As a general rule a tenant is liable under his contract of lease until he is evicted. Neither the beginning of an action to foreclose a mortgage superior to his lease in which he is made a defendant, nor the entry of a judgment of foreclosure and sale constitute such an eviction. The sale may never occur. The amount due may

be paid by the obligors. The plaintiff may repent. Until the sale actually takes place the tenant remains liable to his landlord on his contract. (*Whalin* v. *White*, 25 N. Y. 462; *Mitchell* v. *Bartlett*, 51 N. Y. 447; *Mason* v. *Lenderoth*, 88 App. Div. 38)." *Non constat* Mrs. Martin never would have interfered with her father's lease for seven years. True, she asked more rent in 1921, and there were few landlords who did not do the same thing. But on his death in November, 1920, she made no demand that they surrender the premises. She notified them to pay the rent to *her*, and they subsequently attorned to her by checks payable to her order. And the learned counsel for the grain company wrote her on May 27, 1921, on receiving the request for increased rent: " You seem to have recognized the existing lease by asking for payment of the rent to you and accepting same for the past six months. Such a recognition, it seems to me, would continue my client's rights under the lease until its termination."

I am impressed with the notion that the grain company did not act fairly with the estate of O'Donnell. If they wanted to rely on constructive eviction by paramount title, I think they were called upon to take that position promptly when they received notice of the death of Michael O'Donnell in November, 1920, or on May 6, 1921, when Mrs. Martin wrote them that her father had but a life estate and that " the lease which he gave you expired at his death." True, they did not pay the June, July and August rent when due, but they continued in possession and they paid the rent when they were sued for it in the Municipal Court.

I think there was no evidence of eviction warranting the allowance of the $1,900 claim for damages.

As to the other question involved in the appeal, viz., appellants' contention that the creditor's claim is barred by the Statute of Limitations contained in section 233 of the Surrogate's Court Act and by the *bona fides* of the subsequent purchasers and mortgagees of the property, I agree with the conclusions of the learned surrogate as stated in his opinion.

The decree adjudicates that the creditor asserted a claim against the estate for $1,900 (the difference between the rent reserved in the lease and the market rental during the unexpired term), the filing of the claim with the executor of O'Donnell, rejection thereof and application for sale of the real estate of the decedent for payment of the debt " in a proper proceeding commenced within the time prescribed by law; " that the personal property of the decedent is insufficient to pay the debts and that the executor proceed to sell the real estate, the proceeds to be deposited subject to future order of the court. It is further decreed: " That all

conveyances of said premises and all mortgages placed thereon subsequent to the death of said Michael E. O'Donnell are subject and subordinate to the claim of said Wm. K. Voorhees Grain Company, and said premises, if sold in this proceeding, shall be sold free and clear of the lien of any of said subsequent mortgages and of the rights of any of said subsequent grantees."

The appellants' argument is that the claim having been rejected by the executor, the grain company did not commence an action against the executor within three months or at any other time, and that no proceeding for the sale of the real property of the decedent for the payment of his debts was instituted within eighteen months after the issuance of letters testamentary. The eighteen months' period would not expire until May 29, 1922. On August 16, 1921, appellant John J. O'Donnell, devisee of the real estate (a house on Vanderbilt avenue), conveyed the property to appellant Matheson. This was prior to the presentation of the claim of the grain company to O'Donnell as executor of his father. On January 27, 1922, Matheson conveyed the premises to Catherine Morris and Anna O'Brien.

The grain company began proceedings for compulsory accounting on May 11, 1922. The petition averred, not expressly but I think in effect, that the personal property was insufficient to pay the debts. On February 1, 1923, Catherine Morris and Anna O'Brien conveyed the premises to Memoli and on April 12, 1923, Memoli conveyed to Reilly.

The petition for compulsory accounting was filed within the eighteen months' period — the proceeding was resisted by the executor. The court on August 17, 1922, ordered the filing of an account. The executor instituted proceedings for a voluntary accounting and filed his account September 7, 1922. The grain company, respondent, insists that this voluntary accounting proceeding was a continuance of the previous compulsory proceeding. The two proceedings were consolidated September 25, 1922. The surrogate says in his opinion that the voluntary proceeding was a continuance of the compulsory proceeding. The account in the voluntary proceeding discloses excess of funeral expenses and expenses of administration over personal assets. The respondent claims that these proceedings constituted notice to purchasers and mortgagees of decedent's real estate of the claims of the grain company and necessity for its satisfaction out of the real estate.

The creditor must now assert his demand for sale of real estate to satisfy debts in the accounting proceeding and not, as formerly, by a separate proceeding. Such application is a part of the

judicial settlement. (Surrogate's Court Act, § 236; 2 Heaton Surr. [4th ed.] 1355. See, also, Code Civ. Proc. [Laws of 1880, chap. 178], § 2749 *et seq.*, as amd. by Laws of 1894, chap. 735; Laws of 1909, chap. 183, and other amendments.)

I am satisfied that the surrogate was right in holding that the various grantees and mortgagees, appellants, took subject to the grain company's claim if the same was valid.

But I think the creditor left the property voluntarily and has no claim based upon eviction, actual or constructive.

The decree of the Surrogate's Court of Kings county should be reversed upon the law and the facts, the claim of the creditor, respondent, disallowed and proceedings dismissed, with one bill of costs to the appellants, payable out of the estate. This court finds as matter of fact that the claimant left the demised premises and surrendered possession thereof voluntarily and not because of any asserted paramount title, and that there was no eviction, actual or constructive.

RICH, JAYCOX and YOUNG, JJ., concur: KELBY, J., dissents and reads for affirmance.

KELBY, J. (dissenting):

The lease of O'Donnell to the William K. Voorhees Grain Company contained the following express covenant of quiet enjoyment:

" And the said party of the first part does covenant that the said parties of the second part, on paying the said yearly rent, and performing the covenants aforesaid, shall and may peacefully and quietly have, hold, and enjoy the said demised premises for the term aforesaid " (*i. e.*, for a term expiring October 31, 1924).

There being an express covenant, no implied covenant can be inferred. Implied covenants, which have been more accurately described as " covenants in law," always cease with the estate of the lessor, whereas an express covenant continues in force until the end of the term granted. The cases cited in favor of the appellants relate to covenants in law, and, therefore, as the covenant ceased with the life estate of the lessor, his estate could not be held. The lessor in this case, knowing that he had only a life estate, took the chance of making the express covenant above noted.

The tenant herein yielded to the paramount title of the remainderman. On the death of the life tenant, the lease terminated, and but for the consent of the remainderman to the tenant's possession the tenant would have been a trespasser. (*Williams* v. *Alt*, 226 N. Y. 283.) The surrender of the premises to the remainderman

was not a surrender of the premises under the lease, but under the tenancy at will created by the remainderman's assent to the tenant's possession.

I vote to affirm.

Decree of the Surrogate's Court of Kings county reversed upon the law and the facts, claim of the creditor, respondent, disallowed, and proceedings dismissed, with one bill of costs to the appellants, payable out of the estate. This court finds as a matter of fact that the claimant left the demised premises and surrendered possession thereof voluntarily, and not because of any asserted paramount title, and that there was no eviction, actual or constructive.