R. W. GOUGH, Appellee, v. L. A. LOOMIS AND GRACE LOOMIS, Appellants.

Specific Performance: AGENCY: EVIDENCE. In a suit for specific performance of a contract for the sale of land the evidence on the question of agency is considered and held to show, that the broker who negotiated the sale was the agent of the vendor.

Sale of Land: ACCEPTANCE OF PROPOSITION: EVIDENCE. The acceptance of a counter proposition for the sale of land made by

a vendor in his acceptance of a vendee's offer need not be in writing.   Evidence held to show a complete understanding.

Payment: LIMIT AS TO TIME.   Where the correspondence of the parties constitutes a completed contract of sale of land and the vendee tenders the cash payment with the formal contract duly executed, the vendor cannot defeat specific performance on the ground that the payment was not made in time, there having been no fixed date for such payment.

Uncertainty of Description.   Uncertainty of description in a preliminary contract for the sale of land is cured by the execution of a correct formal contract.

Execution of Land Contract: WAIVER OF TIME LIMIT.   Where a vendor after the time for acceptance of a contract declined to execute another prepared by the vendee, but produced a copy of the original as prepared by him and stated that the same or none must be executed, he thereby waived the time limit for. executing the same.

*Appeal from Webster District Court.*—HON. J. H. RICHARD, Judge.

SATURDAY, APRIL 16, 1904.

SUIT in equity for the specific performance of a contract to convey real estate.   The trial court granted the relief prayed, and defendants appeal.—*Affirmed.*

*A. N. Botsford* for appellants.

*Healy Bros. & Kelleher* for appellee.

DEEMER, C. J.—Plaintiff resides in El Paso, in the state of Illinois.   Defendants are residents of this state, and owned the land which is the subject of controversy.   In October of the year 1901 plaintiff came to Ft. Dodge, in this state, for the purpose of purchasing some land in that vicinity.   He went to that locality at the instance of one Ed. Somers, who resided at El Paso.   W. F. Somers, a son of Ed., resided on a farm near Ft. Dodge, and was also engaged in the real estate business, in conjunction with his father.   Plaintiff, upon his arrival at Ft. Dodge, went to the home of W. F. Somers, made known his mission, and was shown several tracts of land

which had been listed with him for sale. Among other tracts he examined was the land in controversy, which was owned by the defendant L. A. Loomis. After visiting some other localities, plaintiff returned to Ft. Dodge and again examined defendant's land, and then said to W. F. Somers that he would buy it at the price at which it was offered, to wit, $46 per acre. Pursuant to this offer, plaintiff and Somers went to the place of business of defendant L. A. Loomis, and there discussed the proposed purchase, but did not agree upon terms. At that time defendant asked $46.50 per acre for his land; this plaintiff would not then agree to pay. Shortly thereafter plaintiff returned to his home, and on October 25, 1901, wrote W. F. Somers the following letter: "Mr. Fred Somers, Ft. Dodge, Ia.—Dear Friend Fred: I arrived home yesterday P. M. all O. K. Fred, if you see Mr. Loomis tell him I will give him $46.50 per acre. I will deposit $1,000 in the Ft. Dodge bank, and as soon as the abstract is passed upon (you see to this) and is satisfactory to date, I will sign a contract with him and pay the balance in cash the first of next March, except the mortgage, which I will assume. I understand this mortgage is due in June or July [in lead pencil, August]. Of course he pays the interest on this mortgage up till March 1st, 1902, when I take possession; also pays this years taxes. Let me know as soon as possible, as I am on another deal. Yours in friendship, Rushton W. Gough."

This was received by Somers October 26th, and on the same day he presented it to Loomis, who, after reading the same and consulting with his brother, indorsed the following written acceptance on the back thereof:

"10-26. I accept this offer for one hundred and fifty-nine acres (159) L. A. Loomis. Subject to the lease with W. H. Rambler for the coming year ($375)."

Thereupon Somers took the letter with its indorsement, and mailed it to plaintiff, accompanied with this letter:

"I saw Mr. Loomis to-day and made arrangements for the deal O. K. Will be in Monday, and have papers examined and if possible (providing papers are satisfactory) will wire

you Monday evening you are to deposit the $1000.00 at the First National Bank. Yours in haste, W. F. Somers.

["Enclosed letter keep.]"

Upon receipt of these instruments, and on October 31st, plaintiff wrote the following to Somers:

"El Paso, Illinois, October 31st, 1901. Dear Friend Fred: Your letter with Mr. Loomis' acceptance signed upon the back came to my hand the first of the week. Also your father gave me Healeys and Healeys comments upon the abstract. Now Fred when they have perfected the abstract tell them to forward it to me and also to forward the contract and I will have Frank Stitt look the papers over and if satisfactory I will sign them and then forward a draft for a thousand to fix the bargain. I don't think from their comments that there is any thing but that can be fixed up all O. K. * * * I think Loomis might have done a little better by you in the way of commission after I did what I did but as he is looking out for himself, I guess, I have the letter with his signature and will keep it until everything is satisfactory. So will close until I hear from papers. Yours truly, R. W. Gough."

This letter was received by Somers on November 1st, and on the same day he, Somers, advised Loomis of the receipt thereof, and it was agreed between them that a formal contract should be prepared by Loomis. On the following day Loomis had duplicate copies of a formal contract prepared, each of which he signed and delivered to Somers, with an abstract of title, to be forwarded to plaintiff. Somers sent these papers to his father at El Paso, where they were turned over to plaintiff on November 7th. On that day, at the instance of plaintiff, an attorney at El Paso prepared a formal contract which he, plaintiff, proposed to submit to Loomis for approval. This was sent to W. F. Somers. Upon their receipt W. F. Somers showed the same to Loomis at Ft. Dodge, but Loomis declined to sign the contract which plaintiff had prepared, remarking that "his contract would have to go; that Gough could sign his contract or none." Somers there-

upon advised his father of the substance of the conversation with Loomis; telling him that he, Loomis, insisted on having the contracts which he had prepared, and directing his father to tell Gough, the plaintiff, to come to Ft. Dodge and sign the contracts prepared by Loomis, and bring his $1,000 with him. On the day that Gough received this advice, which was on the 12th of November, he came to Ft. Dodge, and on the next day signed the contract which had been prepared by Loomis; presented himself at Loomis' place of business and tendered the $1,000 called for by the contract, and also the contract itself, duly signed. Loomis refused to accept either the money or the contract, and this suit was then brought for specific performance.

Defendant claims that, at the time he delivered the contracts which had been prepared at his instance to W. F. Somers to be forwarded to plaintiff, he, defendant, then told

1. AGENCY: evidence.

Somers that the contracts should be returned to him, Loomis, with the advance payment of money called for therein, on or before November 9th; but there is no evidence that plaintiff had any notice or knowledge thereof except as Somers' knowledge was his, and this raises the question as to Somers' agency. Was he the agent of the plaintiff or of the defendant Loomis? This is a mixed question of law and fact. There can be no doubt under the evidence that Somers was a real estate broker, and that defendant had listed his lands with him. There were no contract relations between Gough and Somers. Somers was to receive his commission from Loomis. The testimony very clearly shows that Somers was Loomis' agent in the transaction, and not an agent for Gough. Loomis first employed Somers; and this relation continued during the entire negotiations. The case is even stronger than *Gate City Land Co. v. Heilman,* 80 Iowa, 477, wherein it was held that the broker was the agent of the vendor. See, also, *Crittenden v. Armour,* 80 Iowa, 221.

It is next contended that there was no meeting of the minds between Gough and Loomis, and no completed con-

tract. This involves primarily a construction of the letters
which passed between these parties. We shall
not set them out again, nor shall we refer to all
the evidence which tends to-show an unqualified
acceptance of the propositions pro and con. It is quite enough
to say that defendant Loomis admitted on the witness stand ·
the acceptance by Gough of all the modifications proposed by
· him. Moreover, the conduct of the parties with reference to .
the preparation of the formal contracts, and the contents of
these instruments as prepared at the suggestion of the parties
themselves, clearly indicates that the minds of the parties had
met on every proposition. It is hard to understand why
Loomis should be preparing and sending formal written con-
tracts to Illinois for the plaintiff to sign, unless he under-
stood that they had come to an agreement and that all that re-
mained to be done was the signing of the formal documents.
The acceptance of the counter proposition made by Loomis in .
the first acceptance of plaintiff's offer was not required to be
in writing. If there was such an acceptance by unequivocal
conduct on the part of Gough, this was sufficient. *Brown v.
Ward,* 110 Iowa, 123.

2. SALE of land: acceptance of proposition: evidence.

Further, it is insisted that the deposit of $1,000 was a
condition precedent to the making of any contract. Turning
again to the letters, it will be observed that no specific time
was fixed therein for the deposit of the money.
The evidence also shows that neither party to
the transaction ever regarded this as a condition precedent.
On the contrary, defendant proceeded to procure an abstract
and to have it sent to plaintiff for examination, and also had
the formal contracts prepared and sent to plaintiff for signa-
ture. Furthermore, defendant did not make this a ground
for refusing to perform when plaintiff .tendered the written
contracts duly signed, with the advance payment called for
therein. This seems to be an after-thought, and is now urged
for the first time for the purpose of defeating the plaintiff.
Defendant should not be permitted to thus "mend his hold."
The evidence shows that when defendant. gave the contracts

3. PAYMENT: limit as to time.

and the abstracts to Somers, he told him, Somers, that the contracts would have to be back with the money by Saturday, the 9th of November, or the deal would be off. It also appears that Loomis saw Somers on this Saturday, and asked him if the money or contracts had been returned. On receiving a negative reply, he then said: "I asked him how many contracts he wanted signed without any money being paid on them, and I told him that he had my contracts and that he hadn't lived up to them; he hadn't sent the money, and I didn't feel beholden to him in any way, and the deal was off. The contracts that I had signed and sent to him, that Somers brought back that Saturday, had not been signed by Gough." No part of this conversation was ever communicated to Gough, and, as the declaration was made to defendant's own agent, it was not binding on the plaintiff. Had there been no arrangements by correspondence, and the entire transaction had rested upon the attempt to have the written contracts signed, doubtless this limitation on the agent's authority would have been binding on the plaintiff. But that is not the case here.

The correspondence itself, taken in connection with the conduct of the parties, created a contract which was binding upon them. The attempt to execute the more formal contract 4. UNCERTAINTY in no way militates against the thought that, of description but for insufficiency of description, there was a binding contract between the parties before the signing of the formal contract of sale. This uncertainty of description was cured when the formal contract was signed by the party to be charged. See *Lowrey v. Danworth,* 95 Mo. App. 441 (69 S. W. Rep. 39); *Greene v. Cole,* 103 Mo. Sup. 70 (15 S. W. Rep. 317); *Sanders v. Fruit Co.,* 144 N. Y. 209 (39 N. E. Rep. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757); *Patrick v. Bowman,* 149 U. S. 411 (13 Sup. Ct. Rep. 811, 37 L. Ed. 790); *Coy v. M. & St. L. R. R.,* 116 Iowa, 558.

This meets most of the propositions submitted by appellant's counsel, but there is another ground upon which to sus-

tain the decree of the trial court.  When the contracts which

**5, EXECUTION of land contract: waiver of time limit.** the plaintiff had had prepared were sent to Somers here in Iowa, Somers presented them to Loomis on November 9th for signature. Loomis refused to sign them, and said that his contracts which had been sent to plaintiff would have to go.  He at the same time handed Somers a copy of the contract he, Loomis, had theretofore prepared and said his contract would go, and no other. This, as it seems to us, amounted to a renewal of the proposition and a waiver of the time limit, even if it were binding; and, as plaintiff accepted the contract and returned to Ft. Dodge with the money on November 13th, we think there was an acceptance within a reasonable time, and that the contract forwarded to plaintiff by defendant, which was signed by plaintiff not later than November 12th, became operative and binding.  The acceptance thereof was within a reasonable time.  *Moore v. Pierson,* 6 Iowa, 279.

A careful investigation of the entire record leads to the conclusion that the decree of the trial court is correct, and it is AFFIRMED.