**John McCARTER, Appellee,**

**v.**

**Charles UBAN and Donald E. Olsen, Appellants.**

**No. 53417.**

Supreme Court of Iowa.

April 8, 1969.

Beecher, Buckmaster, Beecher, Holmes & Lindeman, Waterloo, for appellant Charles Uban.

Mershon, Snow & Knock, Cedar Falls, for appellant Donald E. Olsen.

Newman, Redfern, McKinley & Olsen, Cedar Falls, for appellee.

LARSON, Justice.

This suit in equity was commenced when plaintiff, John McCarter, filed a petition in forcible entry against defendants, Charles Uban and Donald E. Olsen, owner and operator respectively of a combination gas station and grocery store in Cedar Falls, Iowa, after serving upon them a three-day notice to quit pursuant to section 648.3 of the Code. Prior thereto plaintiff had served a thirty-day notice to quit on defendant. When defendants did not remove themselves from the property, the matter was tried to the court on June 7, 1968. On July 17, 1968, judgment was entered removing defendants from the premises and placing plaintiff in possession but withholding execution prior to August 1, 1968. On July 29, 1968, defendants appealed.

The record discloses that in the summer months of 1963 plaintiff and defendant Uban were brought together by a third party for the purpose of establishing a service station and grocery store on plaintiff's property and leasing it to defendant Uban. Pursuant to preliminary negotiations, construction of the facility was begun in the late summer of 1963. Plaintiff undertook to build the station and store, and defendant Uban was to provide the necessary materials, equipment and installations to make the premises suitable for their purpose. Plaintiff's investment was approximately $15,000 to $20,000 and defendant Uban's was approximately $9,000. Although there were discussions, negotiations and tentative understandings concerning this matter, no firm agreement as to the terms of their lease was consummated during the grading and construction of the building.

Late in August 1963, the night before the three large gasoline tanks were to be buried and the Uban electrical and dispensing equipment installed, at Uban's insistence these parties met to iron out the last details of their proposed lease. Although there is conflicting evidence as to what was agreed that evening, it is undisputed that they fixed the monthly rental at $267 and Uban was to pay all taxes and insurance

and maintain the property, and the trial court found the term of the occupancy was to be ten years. Appellant contends all necessary terms of the lease were discussed and agreed-to at that time, but appellee insists no agreement was reached as to the length of occupancy or any other item except as above set out. However, it does appear Uban thereafter buried his tanks, installed his expensive equipment, and on September 22nd began occupation of the premises. It is clear both parties anticipated reducing their agreement to writing, but they disagree as to whether they contemplated further negotiations prior to the execution of the written lease or merely intended that their oral agreement be reduced to writing. It appears that appellee had a written lease prepared and submitted it to appellant in October 1963. Questioning one item of this lease, appellant had a change made and resubmitted it to appellee, who then refused to sign. In any event, no written lease was ever signed by the parties. This dispute was not resolved, but it appears they have carried on their relationship for a period of about four and a half years and, until this suit was commenced, have performed the undisputed portions of the agreement.

Although the trial court found the parties had agreed to a ten-year lease and the consideration due from appellant, it held as a matter of law that no lease was ever consummated between the parties because the parties contemplated further negotiations culminating in a written lease, that no complete oral agreement was reached on the night in question, and that, proper notice having been served, the defendants must surrender possession to plaintiff.

Defendants assign four errors relied upon for reversal. They are, that the trial court erred (1) in finding the notice to quit sufficient on its face, (2) in ruling as a matter of law that the notice of termination served upon defendants was effective to terminate the tenancy, (3) in finding that the defendant Uban was a tenant at will, and (4) in failing to find that plaintiff was

estopped to deny the existence of a ten-year lease. Our first consideration will be given the second and third assignments.

I. Appellants contend the court erred in finding that Uban (hereinafter called the appellant) was a tenant at will whose tenancy could be terminated by a thirty-day notice under section 562.4, Code of 1966. This section provides in part: "Any person in the possession of real estate, with the assent of the owner, is presumed to be a tenant at will until the contrary is shown, and thirty days notice in writing must be given by either party before he can terminate such a tenancy; * * *."

This presumption is not conclusive and a person in possession of the premises may show by competent evidence that he is a tenant for years. Halligan v. Frey, 161 Iowa 185, 188, 141 N.W. 944, 945, 49 L.R.A.,N.S., 112. The presumption is one of fact and not of law. Its purpose was to establish the legal status of one in possession with the assent of the owner and provide for termination when there was no evidence of any other agreement as to term. The presumption infers that this was the agreement between the parties. It is not a strong presumption and can be overcome by substantial evidence to the contrary. Sanders v. Sutlive Bros. & Co., 163 Iowa 172, 176, 143 N.W. 492, 495. See also 2 Drake L.Rev. 30.

In civil cases, generally the burden of proof is measured by the test of preponderance of the evidence. Rule 344 (f) (6), R.C.P. A different rule is applicable when the relief asked is for specific performance, reformation of written instruments, or the setting aside of written instruments affecting real estate. In these exceptions the proof must be clear, satisfactory and convincing. Rules 344(f) (11) and (12) ; Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302, and citations; Brandt v. Schucha, 250 Iowa 679, 96 N.W.2d 179.

It is well settled that an oral contract can be formed prior to the execution

of a formal writing where that writing is intended only as a memorial. Davenport v. Peoria Ins. Co., 17 Iowa 276; Hubbard & Spencer v. Hartford Fire Ins. Co., 33 Iowa 325; Culton v. Gilchrist, 92 Iowa 718, 61 N.W. 384; Farmers' Co-op. Soc. of Geneva v. German Ins. Co., 97 Iowa 749, 66 N.W. 878; Ft. Madison v. Moore, 109 Iowa 476, 80 N.W. 527; Gough v. Loomis, 123 Iowa 642, 99 N.W. 295; Gjellefald v. Drainage Dist., 203 Iowa 1144, 212 N.W. 691. See also Patton, Iowa Annotations to the Restatement of the Law of Contracts.

■ It is appellant's position that a complete oral contract or lease agreement for a term was consummated on the night before his tanks were buried on appellee's premises and that appellee is estopped to deny this tenancy. Of course, to become contractually bound, either orally or by writing, the parties must manifest a mutual, unequivocal assent to the terms of the contract. Hayne v. Cook, 252 Iowa 1012, 1021, 109 N.W.2d 188, 192, and citations; Brandt v. Schucha, supra; Snater v. Walters, supra.

■ The existence of an agreement or meeting of the minds should not alone be determined from the words used by the parties, but also from the situation and surrounding circumstances and by the inferences which mankind would ordinarily and reasonably draw therefrom. Port Huron Mach. Co. v. Wohlers, 207 Iowa 826, 221 N.W. 843; Klavido v. Melberg, 210 Iowa 306, 313, 227 N.W. 833, 837, and citations; LaFontaine v. Developers & Builders, Inc., Iowa, 156 N.W.2d 651, 655, and citations; Janssen v. North Iowa Conference Pensions, Inc. et al., 166 N.W.2d 901, decided April 8, 1969.

■ Our review in these equity proceedings is de novo. We give weight to the findings of the trial court, but are not bound by them. Rule 344(f) (7), R.C.P.

With the above rules in mind, we examine this record and must determine for ourselves whether the appellant sustained his burden to overcome the presumption that his possession of the premises was as a tenant at will, or to establish an oral lease, or to sustain his claim of estoppel.

II. Appellant testified the sole reason for his meeting with the apppellee on the evening before the tank installation was to reach a firm lease agreement. It is undisputed that this meeting took place at that time and that it was necessary to place the tanks in the ground and make other tenant expenditures to make the premises suitable for occupation as a gas station and store. The $9,000 expenditure for these items is not seriously disputed. Appellant also testified he would not have gone ahead with this $9,000 investment in the property unless a firm lease agreement had been reached which was to be reduced to writing for their signatures, that no further negotiations as to terms was contemplated. Being satisfied a complete agreement, especially as to the duration of the lease, had been reached on the night in question, he proceeded with his installations. However, appellee testified a complete agreement that night was not consummated and that further negotiations were contemplated before a written lease would be signed.

There was no indication of any unresolved issue between these parties until the written agreement prepared by appellee was submitted to Uban. The dispute then centered around what would happen to Uban's underground storage tanks and equipment upon expiration or cancellation of the leasehold. Appellant testified this matter was discussed on the evening of the alleged agreement and that it was agreed by the parties that, as a penalty for cancellation by appellant, appellee would become the owner of the storage tanks and other installations, that they agreed upon expiration of the term the tanks would still belong to Uban subject to depreciation under a Shell schedule.

Although appellee denied this, he did have his attorney prepare a written agree-

ment and submitted it to Uban. In addition to the terms appellant says were agreed-to, this proposed written agreement provided that ownership of the tanks would reside in appellee in the case of either expiration or cancellation. Appellant refused to sign this agreement and had his attorney redraw the contract as to the ownership interest at expiration. Appellee then refused to sign, denying he ever agreed to such terms, and assumed the position that no firm oral lease agreement was ever reached.

Generally, to create the relationship of landlord and tenant, it is only necessary to identify the parties, provide a definite description of the property, and include a statement of the term and the amount of rent agreed to be paid. This may be done orally or by writing, subject of course to the statute of frauds, which is not involved here.

The same rule would seem applicable to contracts to make a lease. See Cases and Materials on Landlord and Tenant, Jacobs, 2d Ed.

In Levin v. Saroff, 54 Cal.App. 285, 289–290, 201 P. 961, 962–963, the court, in passing on the status of the parties when one party refused to sign a written lease submitted to him by the other on the ground that it did not conform to his agreement, said: "Plaintiffs' theory of the case is that the agreement herein set out was an agreement to make a lease in the future and not a lease. It appears to us that the agreement contains all the essentials of a valid lease. To create a valid lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and boundary of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials. Jones on Landlord and Tenant, p. 170, § 137a; Cochrane v. Justice Min. Co., 16 Colo. 415, 26 P. 780; Boston Clothing

Co. v. Solberg, 28 Wash. 262, 68 P. 715. * * * where the parties have agreed upon all essential facts there is a binding contract, nothwithstanding the fact that a more formal contract is to be prepared and signed later."

The principal issue here is whether appellant established an oral agreement to lease these premises for a period, or whether he was in possession merely as a tenant at will. Specific performance was not asked, and there was no attempt made to reform a written instrument and no attempt to set aside a written instrument affecting real estate. All the essential elements necessary to form a binding agreement were established by a preponderance of evidence and it was not necessary for defendant to establish it by clear and convincing evidence. In any event, we believe the evidence was clear and convincing. As bearing on the sufficiency of this evidence of a firm contract, see Carter v. Bair, 201 Iowa 788, 789–790, 208 N.W. 283.

The only reasonable inference that can be drawn from facts and surrounding circumstances is that a complete agreement was consummated the night before appellant placed his improvements in and on the premises, and that the reduction to writing was intended only as a memorial. Both parties had considerable business experience. Appellant was experienced in the oil business and had studied the situation carefully through the use of traffic counts and surveys before deciding upon the feasibility of such a business in this area. He had studied the situation and arrived at a term-of-years figure from which he could get a return on his investment. It also appears that appellee considered carefully the period of time it would take to realize his investment and had several discussions with a banker as to amortization over a ten-year period, a strong indication that the term agreed-to was ten years.

Such vital interests of the parties lend substance to appellant's contention that

the sole purpose of the meeting before he installed his equipment was to reach a firm agreement of lease, especially as to its duration. Obviously, as a reasonably prudent man, appellant would not have made these expenditures without first concluding such an agreement. To chalk this controversy off as "poor business judgment" on the part of the appellant, as appellee contends, is untenable under the revealed facts and circumstances, as well as the reasonable inferences that can be drawn therefrom. We cannot reasonably conclude from the evidence before us that an agreement as to the length of this occupancy was not reached on the night in question.

III. As to the disposition of the tanks and equipment at the expiration of the lease, we believe appellee's argument goes to the interpretation of the oral contract, not to its existence. We are satisfied that appellant has proved by substantial evidence that an agreement as to length of occupancy existed prior to submission of the written lease, and that this was sufficient to overcome the statutory presumption that defendant's occupancy was that of a tenant at will. This alone was a sufficient defense to the plaintiff's suit herein and it should have been dismissed. In so holding, we do not purport to determine all the terms of the lease under the oral agreement, which may or may not be determined in a proper proceeding hereafter.

In light of the foregoing, we find it unnecessary to determine the sufficiency of the notices and the issue of estoppel. As to the merit of the latter contention, see Janssen v. North Iowa Conference Pensions, Inc., supra. Appellant having overcome the presumption that he was a tenant at will, the judgment rendered by the trial court must be and it is reversed.

Reversed.

All Justices concur except GARFIELD, C. J., who dissents.