PRESTYPE INC., Appellee,

v.

John F. CARR d/b/a M B & R Enterprises, Appellant.

No. 57628.

Supreme Court of Iowa.

Dec. 15, 1976.

Frank M. Smith and Earl W. Sutton, of Sutton & Nielsen, Des Moines, for appellant.

John E. Landess, of Garten, Garten & Landess, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

Defendant appeals from an adverse judgment entered in a law action tried to the court. Defendant, John F. Carr, is sole

proprietor of M B & R Enterprises, an art supply business. Plaintiff, Prestype, Inc., is a corporation organized and doing business under the laws of the state of New York with its principal place of business in New Jersey.

This appeal stems from an action instituted by plaintiff on an open account to recover the reasonable prices and values of goods, wares and merchandise sold and delivered to defendant as listed in a bill of particulars attached to the petition. The unpaid balance of defendant's open account was alleged to be $4494.72. Defendant in answer specifically denied each of the 16 items contained in the bill of particulars. However, as a witness defendant acknowledged receipt of the merchandise referred to in each of those items.

The trial court rendered judgment for plaintiff in the amount of $3250. Costs were taxed equally to plaintiff and defendant.

I. This court's scope of review of a law action tried to the court is dictated by a number of well established principles. These principles were set out as follows in *Whewell v. Dobson*, 227 N.W.2d 115, 117 (Iowa 1975):

"On appeal from a law action tried to the court, as here, review in this court is only on errors assigned and the matter is not triable de novo. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal.

"Further, we must construe the evidence in the light most favorable to the trial court's judgment, and this court will not weigh the evidence or pass on the credibility of the witnesses.

"However, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom is correct, nor does it apply if in arriving at a finding the trial court erred in its ruling on evidence or in other respects upon questions of law which materially affect that decision. * * * [citing authorities]." See also *Davis v. Hansen*, 224 N.W.2d 4, 5 (Iowa 1974) and *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 708 (Iowa 1973).

II. The evidence was presented in confusing order. At one point in the trial, Judge Denato had such "difficulty following the logic and train of information" presented that he proceeded to question witness John Carr for some twelve pages in the transcript.

The parties commenced business relations in the middle of 1971 when plaintiff began selling merchandise to defendant on open account. At the time of the transaction which prompted this litigation defendant's account showed a zero balance.

In February of 1972 Charles Varner, a manufacturer's representative associated with plaintiff, approached defendant concerning the purchase of some of plaintiff's products. Negotiations between Varner and defendant resulted in the former "phoning in" defendant's order on April 25. The terms of that order and purchase are the basis of this controversy.

William F. Rose, vice-president and general manager of Prestype, Inc., was the only witness called by plaintiff. He testified Varner informed him in an April telephone conversation he had discovered a new account in the Art House, a Des Moines business. Varner explained to Rose that M B & R Enterprises would be the actual purchaser with the merchandise "drop shipped" to the Art House. Rose and Varner discussed the fact defendant was a relative newcomer to the art supply business and his limited financial capabilities. It appears Rose decided to give defendant a "deal" on the cost of his order in light of its size and defendant's financial situation. Defendant's order, dictated to Rose by Varner, was then processed.

The prevailing price for plaintiff's product "Prestype" at that time was $2.50 per sheet. Pursuant to the alleged order defendant was sent and received 4,968 sheets

at the cost of $2.00 per sheet and over 300 rolls of "Prestape" at varying costs per roll. (Defense exhibit "B"). In addition to the reduced charge for the Prestype sheets defendant received a 55 percent discount on the total cost of his order. Rose testified defendant had made only one payment of $150 on his account toward the April purchase. Rose also testified extensively as to the billing procedure of his company.

On cross-examination of Rose it was adduced he had no communication with defendant concerning the order of April 25 prior to that date. No written order signed by defendant existed. The order and subsequent billing were processed entirely pursuant to the telephone conversation between Rose and Varner. In addition it was established plaintiff had shipped merchandise to defendant subsequent to the disputed transaction and payments had been made thereon. On re-cross Rose testified Varner was on a straight commission basis with Prestype, Inc. It was also adduced Rose had sent a letter to Varner, dated August 11, 1972, reprimanding the latter for the terms of sale quoted to defendant. (Defense exhibit "C").

Plaintiff rested following Rose's testimony and defendant moved for a directed verdict. The grounds for that motion will be discussed hereinafter as the overruling of the motion is assigned as error.

John Carr was the only defense witness and testified Varner initially approached him with the idea of selling defendant a variety of plaintiff's products in a package deal. Defendant however balked at that idea and requested he be able to choose the merchandise he wanted. Defendant believed Varner had agreed to this. Defendant was also under the impression the agreement he had worked out with Varner called for plaintiff to send a sales representative to work with defendant to help boost sales of plaintiff's product line. Finally, defendant felt the terms of the purchase called for full payment within six months. The alleged agreement reached by Varner and defendant was not reduced to a writing.

Defendant's testimony is contradictory and confusing as to whether he actually authorized Varner to place an order for him and if so for what merchandise. In any event, before defendant got a chance to specify the merchandise he desired, the large order referred to above was delivered to him. Defendant did not want any Prestape and was unhappy with the styles and types of Prestype sent. His dismay was conveyed to Varner but defendant did not refuse the merchandise feeling that with the assistance of the promised sales representative he would be able to pay for the merchandise within the agreed upon six months. Rose called defendant about the order after Varner had informed Rose of defendant's dissatisfaction and according to defendant's testimony he and Rose attempted to iron out the problems concerning the discount, payment terms and the sales representative. Evidently defendant felt these discussions were not productive.

In rebuttal Rose testified when Varner called him to place the April 25 order there was no discussion concerning a price of 70 cents per sheet, defendant's right to choose the products he desired, full payment within six months, or the assistance of a sales representative. He also testified in a telephone conversation with defendant in August he advised defendant he was mistaken as to the payment terms on the order. He informed defendant payment had to be one-sixth each month for six months. Defendant responded that he realized six months to pay in full "was ridiculous" but Varner offered it and he could not turn it down. Rose stated Prestype, Inc. would not "go any further on this business with you paying at the end of six months." There was no discussion concerning the "mix" of products received by defendant and no mention of defendant's discount or the sales representative. The conversation ended with defendant assuring Rose a check would be sent immediately and the account would be paid off.

On cross-examination it was adduced Varner had admitted to Rose he had made a mistake in quoting payment terms to de-

fendant. Rose reprimanded Varner and then called defendant to attempt to straighten out the payment terms. Rose stated he believed the only problem with the transaction was the terms of payment. He had no reason to believe defendant had any argument with the price and knew nothing of any promised sales representative.

At the close of all the evidence defendant again renewed the motion for directed verdict which was again overruled.

The trial court's findings of fact and conclusions of law were entered of record immediately upon the conclusion of the one-day trial. The trial court stated in pertinent part as follows:

" * * * Plaintiff in this case is bound by the representations of its agent, Mr. Varner, as to the terms of the sale. The Court accepts the Defendant's testimony that in effect no contract was made with him but by the Defendant's subsequent conduct repeated a number of times he had confirmed or adopted a contract and the only testimony the Court has as to the terms of that contract that he adopted have to do with his negotiations with Mr. Varner.

"The Court finds that the rate of 70 cents per sheet and a proportionate amount of discount as to the cost of the rolls would result in a figure of approximately $3,500 for the sheets at that rate and approximately $500 for the rolls totalling $4,000. The Court feels that the terms of the contract adopted by the Defendant having to do with the presence of the salesman, sales representative, to boost the sales could not reasonably be expected by him, so the Court values the absence of that item, being the absence of that term on the part of the Plaintiff, at $750 resulting in a net judgment to the Plaintiff of $3,250 * * *."

Defendant frames the issues which he maintains are presented for review in this appeal in the following fashion:

(1) Whether the trial court erred in failing to sustain defendant's motion for directed verdict.

(2) Did the trial court err in permitting over defendant's objection the introduction of hearsay evidence and was such error prejudicial to defendant?

(3) Was there any basis in law or fact for the court's finding as to the value of a sales representative?

(4) Did the trial court err in failing to consider the inference from plaintiff's failure to call Mr. Varner as a witness that his testimony would have been damaging to plaintiff's case?

(5) Whether the trial court erred in concluding defendant's conduct established his confirmation or adoption of a contract with plaintiff.

(6) Did the trial court's judgment computations include obvious mathematical errors and ignore defendant's established payment on account of $150?

III. It would appear to be advantageous to deal with defendant's first two assignments of error in reverse order. Therefore, this division will be concerned with the hearsay issue and in division IV defendant's contention he was entitled to a directed verdict will be considered.

Plaintiff attempted to establish the existence of the alleged account and contract in question through Rose's testimony concerning his conversations with Varner as to defendant's alleged order. On numerous occasions throughout Rose's testimony defendant asserted hearsay objections.

It is not clear whether defendant contends error was committed on all overruled objections or whether he only assigns as error the rulings included in the appendix. Defendant's brief refers to evidence "entered over Defendant's objection (App. pp. 5, 6, 7 & 8)." This court only reviews errors assigned. Therefore, only those objections and rulings set out in the referred to pages of the appendix will be considered. They are as follows:

"Q. What amount or quantity was ordered in this April order?

(1) "MR. SUTTON: Objected to, Your Honor, hearsay.

" * * *

"THE COURT: The objection will be taken under advisement for the moment. What amount was ordered, sir?

"A. In this order as I remember there was $4,600.00 worth that was ordered.

"Q. What in quantity of product, what would that be? A. It was about—

(2) "MR. SUTTON: Same objection, Your Honor.

"THE COURT: Overruled.

" * * * (The answer is not set forth in the appendix).

"Q. When you received the order over the phone your procedure then would be to do what?

(3) "MR. SUTTON: Objected to as hearsay, Your Honor.

"THE COURT: Overruled.

" * * *

(4) "MR. SUTTON: Without interrupting each time, Your Honor, may I interpose the objection that this is based on hearsay testimony and that objection can stand to this line of questioning as to this order?

"THE COURT: I'm sorry but it can't.

(5) "MR. SUTTON: I would object then that the answer to the question is based upon hearsay.

"THE COURT: Overruled.

" * * *

"Q. This order was set up on what price basis? A. This was set up—

(6) "MR. SUTTON: Objected to, Your Honor, as based upon hearsay.

"THE COURT: Overruled.

" * * *

"Q. Can you tell me what the prevailing price of Prestype sheets was at that time? A. Yes.

(7) "MR. SUTTON: Objected to, Your Honor, wholly irrelevant and immaterial to any issue in this case and it is based on hearsay testimony as far as my client is concerned.

"THE COURT: Overruled.

"A. It was $2.50 a sheet.

" * * *

"Q. Can you tell me the price that this order was filled at?

(8) "MR. SUTTON: Same objection, Your Honor.

"THE COURT: Same ruling.

"A. The order was billed at $2.00 a sheet.

" * * *

"Q. Are these statements shown on that or are the debits and credits shown on that statement true and correct?

(9) "MR. SUTTON: Objected to, Your Honor, as not based on the best evidence. It is based upon hearsay and it is irrelevant and immaterial to any issue in this case as to the sale.

"THE COURT: Taken under advisement.

" * * *

(10) "MR. SUTTON: I would object to the introduction of Exhibit 1, Your Honor. Exhibit 1 [bill of lading, packing slip, etc., covering the disputed order] is not the best evidence in this case; that it is based upon hearsay evidence and that there is no showing as to any of the contents of the documents having been approved or ordered by the defendant in the case. It contains numerous notations and markings that are not shown to be of any—even acknowledge the defendant in this case and therefore the basis of this Exhibit 1 is hearsay * * *.

"THE COURT: Taken under advisement.

(11) "MR. SUTTON: I would object to the introduction of Exhibit 2 [statement of defendant's account], Your Honor, for the same reasons * * *."

Defendant's only authority in support of his numerous assignments of error in this division is the following statement of the well established definition of hearsay in *Ruden v. Hansen*, 206 N.W.2d 713, 717 (Iowa 1973):

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

prove the truth of the matter asserted. * * * [citing authorities]."

■ Defendant's fourth objection which is based upon the trial court's refusal to permit a standing objection is without merit. Although a standing objection may save trial time and be convenient for both court and counsel, it makes appellate review infinitely more difficult and, for the litigants more uncertain. The allowance of standing objections in trials at law is ordinarily not to be recommended. See *State v. Johnson*, 237 N.W.2d 819, 823 (Iowa 1976) and *State v. Jeffs*, 246 N.W.2d 913 (filed November 17, 1976).

■ Defendant's third and fifth objections were correctly overruled. The question propounded to Rose merely called for him to describe the procedure of his company in processing a telephone order. His response thereto clearly does not fall within the definition set out above.

■ Defendant's sixth and eighth hearsay objections are likewise without merit. The questions called for Rose to state what he had charged for the items in the alleged order. His response did not necessarily have to include hearsay statements and as soon as hearsay crept into his answers the court sustained counsel's hearsay objections.

The seventh hearsay objection propounded by defendant is clearly without merit and requires no discussion.

Defendant's ninth objection appears to have come as plaintiff was attempting to lay the foundation for the introduction into evidence of a business record pursuant to section 622.28, The Code. The court took the objection under advisement and later overruled it apparently satisfied the foundation had been properly laid. There was no error in the trial court's actions.

■ Defendant's hearsay objections to plaintiff's exhibits 1 and 2 must fail in the face of section 622.28, The Code. It is apparent the trial court recognized the applicability of the business records exception to the hearsay rule and admitted exhibit 2 thereunder. Considerable discretion as to the admissibility of alleged business records is left with the trial judge. No abuse of that discretion is demonstrated herein. See *Ritland v. Security State Bank*, 257 Iowa 21, 26, 131 N.W.2d 464, 468; *State v. Anderson*, 159 N.W.2d 809, 815 (Iowa 1968). The same reasoning would seem to apply to defendant's objection to plaintiff's exhibit 1. The fact the court took the latter objection under advisement is of no consequence. *Ritland, supra.*

■ The questions giving rise to defendant's first and second objections elicited a response from Rose as to what was ordered in the April 25 order. In this connection we point out Rose had no communication with defendant concerning the order of April 25 prior to that date. No written order signed by defendant existed. Defendant in answer to plaintiff's petition had denied plaintiff's allegation that it had furnished, sold and delivered to defendant at defendant's special instance, order and request the goods, wares and merchandise set out in the bill of particulars.

Defendant's hearsay contention appears to be based upon the fact Rose's response incorporated within it what someone told him the order was to consist of. In other words, someone made a statement to Rose concerning the merchandise to be ordered and Rose's testimony as to the contents of that order, in defendant's opinion, is hearsay.

■ To constitute objectionable hearsay the statement must be offered for the truth of the matter asserted therein.

In *State v. Leonard*, 243 N.W.2d 887, 890–891 (Iowa 1976), this court quoted with approval the following explanation of the theory of the hearsay rule as set forth in VI Wigmore on Evidence, (Third Ed.), section 1766 at 177–178:

"The theory of the hearsay rule * * * is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-

examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted*, the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is received, this is in no way due to the hearsay rule." (Emphasis in original). This section appears without change in Chadbourn's Revision 1976.

Later in the opinion we quote from section 1788 of *Wigmore* (Third Ed.):

" * * * If, then, an utterance can be used as circumstantial evidence, i. e. without inferring from it as an assertion to the fact asserted * * * the hearsay rule does not oppose any barrier, because it is not applicable." This quotation appears as the same section in Chadbourn's Revision of this treatise.

The following statement appears in *State v. Rush*, 242 N.W.2d 313, 319 (Iowa 1976):

"The distinction between statements offered to prove the truth of a matter asserted and those offered to prove only (1) the fact such statements were made or (2) their effect on subsequent actions of the hearer, has been recognized by this court. * * * [citing authorities]."

The principle articulated in *Wigmore* is recognized in *Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70, 82 (7 Cir. 1950), reversed on other grounds, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). Defendants there sought to justify their actions which gave rise to plaintiffs' civil antitrust action by introducing into evidence complaint letters received from customers of plaintiffs. The trial court excluded those letters as hearsay and the Seventh Circuit disagreed stating:

"We agree with defendants that the complaint letters received by them should have been admitted, not for their testimonial use, to prove the facts contained therein, but to show the information on which they acted. This is a well-established exception to the hearsay rule. * * * [citing authorities]."

At the point in trial when the challenged questions now under consideration were propounded there was still an issue created by defendant's answer to plaintiff's petition as to what merchandise, if any, had been sent to him. Rose's responses would not be admissible when challenged by the hearsay objection to prove what, if anything, defendant ordered from plaintiff through Varner on April 25. But such responses would be admissible as circumstantial evidence tending to show why plaintiff sent the merchandise to defendant and why it sent the items it did. The trial court was correct in its ruling.

■ IV. Following the presentation of plaintiff's evidence defendant moved for a directed verdict. Summarized, the grounds for said motion were that plaintiff had failed to establish by competent evidence the existence of the order in question, the terms and conditions thereof and the existence of an open or contractual account between the parties.

Defendant therefore argues a question for the fact finder had not been presented. The trial court overruled defendant's motion "at this time." Defendant's renewed motion for directed verdict made at the close of all the evidence was likewise overruled "at this time." These rulings are assigned as error.

Defendant points out plaintiff had the burden of proof, citing rule 344(f)(5), Rules of Civil Procedure. Defendant then states plaintiff's only witness "never knew the terms of the sale, the price or other conditions." Defendant's argument is concluded by the assertion the motion for directed verdict "should have been sustained for failure of the Plaintiff to sustain the burden of proof."

*Schneberger v. Glenn*, 176 N.W.2d 782, 784 (Iowa 1970), has this statement of principle:

"In passing upon motions to direct verdicts for a defendant, the court is required to view the evidence in the light most fa-

vorable to the plaintiff it will reasonably bear. * * * [citing authority]. If reasonable minds might differ on the evidential questions, then a fact or jury question is presented and the motion to direct the verdict should be overruled. * * * [citing authority]. A movant for a directed verdict must be considered as admitting the truth of all evidence offered by the adverse party and every favorable inference which may be fairly and reasonably deduced therefrom. * * * [citing authority]." See also *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10, 17 (Iowa 1975); *Cronin v. Hagan,* 221 N.W.2d 748, 751 (Iowa 1974); *Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 321 (Iowa 1974).

Considering plaintiff's evidence with the foregoing principles in mind defendant's motion was properly overruled. Pertinent hereto is the following statement from *Gardner and Beedon Co. of Springfield v. Cooke,* 267 Or. 7, 513 P.2d 758, 759:

"It is our conclusion that plaintiff's actual ledger cards showing each entry of debit and credit, the testimony of plaintiff's manager showing the simultaneous business machine posting and invoice billing of the customer, his testimony concerning the correctness of the entries, and his testimony that all materials represented by the entries had been delivered to defendant constitute sufficient evidence to make a *prima facie* case. * * * [citing authority]."

Plaintiff's evidence and all favorable inferences reasonably deduced therefrom was sufficient to present a fact question and therefore the trial court was correct in overruling defendant's motion for directed verdict. This conclusion applies both to defendant's motion at the close of plaintiff's evidence and the motion at the close of all the evidence. Defendant's evidence was not so strong as to let it be said reasonable minds could not differ on the evidential questions present in the litigation.

Defendant's contention is without merit.

V. Defendant maintains the trial court erred in finding the assistance of a sales representative to boost defendant's sales of plaintiff's line of products should be valued at $750. Defendant insists "the record is void of even a scintilla of evidence as to the value of such service" and therefore the judgment is not supported by substantial evidence and this court is not bound by the trial court's findings. Rule 344(f)(1), R.C.P. *Volkswagen Iowa City, Inc. v. Scott's Incorporated,* 165 N.W.2d 789, 793 (Iowa 1969).

We agree there is no basis in the record for the trial court's finding the value of the sales representative's assistance was $750.

In *In re Estate of Held,* 231 Iowa 85, 97, 300 N.W. 699, 705, is the following:

" * * * We have many times said that verdicts cannot and must not be based on guesses or conjectures. Many cases could be cited on this self-evident rule of law."

As we understand defendant's argument, he insists this error of the trial court nullifies the entire judgment even though there may be other findings made by the trial court which are supported by substantial evidence. It is our view that the contention is without merit.

VI. Defendant contends the trial court's failure to consider the fact plaintiff failed to call Charles Varner as a witness was error. He argues Varner's testimony was "mandatory evidence."

"When it would be natural under the circumstances for a party to call a particular witness, * * *, and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference. * * *

" * * * *

"Despite the plenitude of cases supporting the inference, caution in allowing it is suggested with increasing frequency. This counsel of caution is reinforced by several factors. Possible conjecture or ambiguity of inference is often present. The possibility that the inference may be drawn invites waste of time in calling unnecessary witnesses or in presenting evidence to explain why they were not called. Anticipating that the inference may be invoked entails substantial possibilities of surprise. And

finally, the availability of modern discovery procedures serves to diminish both the justification and the need for the inference." McCormick on Evidence, (Second Ed.), section 272, pp. 656–657. See also 2 Wigmore on Evidence, (Third Ed.), section 288.

In *State v. Parker,* 261 Iowa 88, 101, 151 N.W.2d 505, 513, this court stated:

"No presumption arises when it is shown that the witness is equally available to either party or when the testimony that could be elicited from such witness would merely be cumulative. * * * [citing authorities]." See also *State v. Turley,* 239 N.W.2d 544, 545 (Iowa 1976).

This court has said evidence is not "equally available" when the witness in question is hostile to one party. *Crosser v. Iowa Dept. of Public Safety,* 240 N.W.2d 682, 685 (Iowa 1976). This clearly is not the case here.

Varner's employment relationship with plaintiff was terminated more than one year prior to trial. Both parties had equal access to Varner as a witness and his testimony could have been of importance to either side. The inference in issue would not have been an appropriate consideration in the instant case. Defendant's contention cannot be upheld.

VII. Defendant contends the trial court's conclusion that defendant's conduct subsequent to his receipt of the merchandise in question amounted to a confirmation or adoption of the contract offered by plaintiff is erroneous as a matter of law.

■ Ordinarily, an offeror does not have power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so. However, "there are many cases in which, because of the past relations of the parties or of accompanying circumstances, the silence of the offeree after receipt of an offer has been held to constitute acceptance and to create a contract. These are all cases in which the conduct of the party denying a contract has been such as to lead the other reasonably to believe that silence, without

communication, would be sufficient. * *

"Thus, where a party ships goods to another at the latter's standing request, the receipt and retention of the goods without any notice of refusal to accept them have been held to sustain a verdict that there was an acceptance and a promise to pay. " * * *

"In like manner, where goods are shipped on different terms from those proposed by the buyer, the acceptance and user of the goods without notice of dissent is an acceptance of the terms of the seller's counter-offer." 1 Corbin on Contracts, section 75, pp. 316–319.

The same principle is advocated in 1 Williston on Contracts, (Third Ed. Jaeger), section 91, in this language:

"Generally speaking, an offeree need make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer; but the relations between the parties or other circumstances may have been such as to have justified the offeror in expecting a reply, and, therefore, in assuming that silence indicates assent to his proposal. Such cases may be thus classified:

"(1) Where the offeree with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.

"(2) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.

"(3) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction was intended by the offeree as a manifestation of assent, and the offeror does so understand.

"(4) Where the offeree takes or retains possession of property which has been offered to him, such taking or retention in the absence of other circumstances is an acceptance. If other circumstances indicate that

the taking or retention is tortious, the offeror may nevertheless at his option treat it as an acceptance." See also Calamari and Perillo on Contracts, section 31 and Restatement, Second, Contracts, section 72, Tentative Drafts Nos. 1–7.

In *McCarter v. Uban,* 166 N.W.2d 910, 913 (Iowa 1969), this court said:

" * * * Of course, to become contractually bound, either orally or by writing, the parties must manifest a mutual, unequivocal assent to the terms of the contract. * * * [citing authorities].

"The existence of an agreement or * * [manifestation of mutual assent] should not alone be determined from the words used by the parties, but also from the situation and surrounding circumstances and by the inferences which mankind would ordinarily and reasonably draw therefrom. * * * [citing authorities]." See also *Fairway Center Corporation v. U.I.P. Corporation,* 502 F.2d 1135, 1141 (8 Cir. 1974).

■■■ The trial court as fact finder would have been justified in finding from William Rose's testimony defendant complained about no aspect of the order involved herein. This failure to reject the merchandise and failure to complain of any term pertinent thereto supports the conclusion defendant adopted plaintiff's terms of sale. The trial court's conclusion was not erroneous as a matter of law and defendant's contention to the contrary cannot be upheld under the record.

■■■ VIII. Defendant's argument the trial court committed errors in calculating the amount of plaintiff's judgment is well founded.

The trial court set the contract price of the Prestype sheets at 70 cents per sheet. The court then concluded the total amount due on the Prestype was "approximately $3500." This total is erroneous. It was adduced at trial that 4,968 sheets of Prestype were received by defendant. Therefore, the amount due is $3,477.60.

In addition the trial court erred in calculating the cost of the Prestape rolls. The court included in plaintiff's judgment "ap-

proximately $500 for the rolls." This finding has no justification from the evidence of record. Defendant's exhibit "B" establishes the price of the Prestape rolls as $385.60, less a 55 percent discount, for a total of $173.52.

The trial court likewise erred by failing to include in its computations defendant's payment of $150 on account.

The question remains whether the allowance of $750 made by the trial court as damages for plaintiff's failure to furnish defendant the assistance of a salesman is to be deducted from the amount awarded plaintiff.

Plaintiff did not cross-appeal from the judgment.

■■■ Where a party has not appealed from portion of judgment adverse to himself he is not entitled to a more favorable decision in the supreme court on an appeal prosecuted by the adverse party. *Morris Plan Co. v. Bingham F. and Gr. Co.,* 259 Iowa 404, 424, 143 N.W.2d 404, 417.

We therefore conclude the sum of $750 is to be deducted from the balance due.

It is our view the amount of plaintiff's judgment should be computed as follows:

| | | |
|---|---|---|
| 4,968 Prestype sheets @ 70 cents each | | $3,477.60 |
| Prestape rolls, less 55 percent discount—Total $173.52 | | 173.52 |
| | | $3,651.12 |
| Paid on Account | $150.00 | |
| Amount allowed for salesman's assistance | $750.00 | |
| Total Deduction | | 900.00 |
| Balance Due | | $2,751.12 |

Costs on appeal are taxed one-half to appellant and one-half to appellee.

Except as modified to reflect necessary corrections in the trial court's computation, the case is—Affirmed.